**SPRINT SPECTRUM LP,**
Plaintiff–Appellee,

v.

**CONNECTICUT SITING COUNCIL,**
Defendant–Appellant,

Cellco Partnership, doing business as Bell Atlantic Mobile and Springwich Cellular Limited Partnership, Intervenors–Defendants.

Docket No. 01–7127.

United States Court of Appeals,
Second Circuit.

Argued Oct. 25, 2001.

Decided Dec. 17, 2001.

Mark F. Kohler, Assistant Attorney General, Attorney General's Office of the State of Connecticut, Hartford, CT, for Defendant–Appellant Connecticut Siting Council.

Kenneth I. Spigle, Newton, MA, for Plaintiff–Appellee Sprint Spectrum L.P..

Before FEINBERG, McLAUGHLIN, and F.I. PARKER, Circuit Judges.

PER CURIAM.

Defendant–Appellant Connecticut Siting Council ("Siting Council" or "Council") appeals from a judgment of the United States District Court for the District of Connecticut (Alfred V. Covello, *Chief Judge* ) entered on January 9, 2001 in which the district court declared that Defendant–Appellant erred when it interpreted the provisions of Connecticut General Statutes § 16–50i(a)(6) to exclude from its jurisdiction the telecommunications towers and associated equipment used by Plaintiff–Appellee Sprint Spectrum LP's ("Sprint Spectrum") personal communications services ("PCS") systems and that the Council did have such jurisdiction, and ordering it to accept, process and act upon Sprint Spectrum's requests for authority to construct such telecommunications towers and associated equipment in the same manner as it does other applicants in its jurisdiction.

This appeal concerns a dispute about whether the telecommunications towers and associated telecommunications equipment used by Sprint Spectrum for its PCS system are within the Council's jurisdiction such that Sprint Spectrum, rather than seeking siting approval from each of the many municipalities throughout Connecticut, may avail itself of the Council's statewide jurisdiction to grant authority to construct telecommunications towers and associated telecommunications equipment (collectively, "towers").

The Siting Council contends that its jurisdiction does not extend to towers used for the provision of PCS systems. The district court disagreed, concluding that the language of the federal regulation incorporated into § 16–50i(a)(6) applies to Sprint's PCS system. We agree with the district court.

## I. BACKGROUND

Sprint Spectrum is a nationwide wireless telecommunications company that provides a type of commercial mobile radio service known as Personal Communications Services, or PCS. The Council is an agency of the State of Connecticut possessing jurisdiction over the siting of public utility facilities. Conn. Gen.Stat. § 16–50x.

On October 29, 1997, Sprint Spectrum petitioned the Siting Council for a declaratory ruling on the scope of its jurisdiction, and posed three questions, only one of which is at issue in this appeal: whether Sprint Spectrum's towers, which it uses for its PCS system, constitute "facilities" as defined in Connecticut General Statutes § 16–50i(a)(6) and thus are subject to the Siting Council's jurisdiction.

The Siting Council answered that Sprint Spectrum's PCS towers did not fall under the definition, declaring that "towers used to provide PCS do not come within the scope of a fair interpretation of any of the categories in the statutory definition of 'facility.' "

Sprint Spectrum then brought an action in the district court pursuant to 47 U.S.C. § 332(c)(7)(B)(v),[1] seeking, among other things, a determination that its PCS towers are included in the Siting Council's jurisdiction under § 16–50x and § 16–50i(a)(6). Upon the parties' cross-motions for partial summary judgment, the court conducted a hearing, at the conclusion of which it granted Sprint's motion and denied the Siting Council's motion. The

---

1. 47 U.S.C. § 332(C)(7)(b)(v) provides:

   Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

court based its decision on the fact that both parties agree that Sprint's PCS system fits the plain language of the definition of "cellular system" set forth at 47 C.F.R. Part 22, which is referred to by § 16–50i(a)(6). Upon Sprint Spectrum's motion, the court entered a judgment in which it declared that the Council erred in its declaratory ruling to Sprint Spectrum, declared that the Council does have jurisdiction over Sprint Spectrum's PCS towers, ordered the Council to accept, process and act upon Sprint Spectrum's requests for authority to construct towers in the same manner as it does with respect to similar requests received by other applicants under the Council's jurisdiction, and dismissed Sprint Spectrum's remaining claim as moot. The Siting Council appeals.

## II.  DISCUSSION

■ We review the district court's decision to grant summary judgment, and its decision to grant declaratory relief, de novo. *Allstate Ins. Co. v. Mazzola,* 175 F.3d 255, 258 (2d Cir.1999); *Continental Cas. Co. v. Coastal Sav. Bank,* 977 F.2d 734, 736 (2d. Cir.1992).

■ The Public Utility Environmental Standards Act vests the Siting Council with exclusive jurisdiction over the siting of various public facilities. Conn. Gen. Stat. § 16–50x. As it pertains to wireless telecommunications, "facilities" is defined as:

> such telecommunication towers, including associated telecommunications equipment, owned or operated by the state, a public service company or a certified telecommunications provider or used in a cellular system, as defined in the Code of Federal Regulations Title 47, Part 22, as amended....

Conn. Gen.Stat. § 16–50i(a)(6). At the time of § 16–50i's enactment, the applicable section of the Code of Federal Regulations defined "cellular system" as

> [a] high capacity land mobile system in which assigned spectrum is divided into discrete channels which are assigned in groups to geographic cells covering a cellular geographic service area. The discrete channels are capable of being reused in different cells within the service area.

47 C.F.R. § 22.2 (1994).[2] Both parties agree that Sprint Spectrum's system satisfies each of the component parts of this definition. Indeed, it is undisputed that Sprint Spectrum's PCS system is a "high capacity land mobile system" with "assigned spectrum" "divided into discrete channels" that are "assigned in groups to geographic cells covering a cellular geographic service area," and "are capable of

2. That subpart has since been amended to define "cellular system" as:

> An automated high-capacity system of one or more multichannel base stations designed to provide radio telecommunication services to mobile stations over a wide area in a spectrally efficient manner. Cellular systems employ techniques such as low transmitting power and automatic hand-off between base stations of communications in progress to enable channels to be reused at relatively short distances. Cellular systems may also employ digital techniques such as voice encoding and decoding, data compression, error correction, and time or code division multiple access in order to increase system capacity.

47 C.F.R. § 22.99(1999). Whichever version of the definition we apply, our conclusion is the same because both parties agree that the language of this amended definition, like the earlier one, describes Sprint Spectrum's PCS system. It is undisputed that "Sprint Spectrum's PCS system is a 'high capacity system' which uses base stations for radio telecommunications, and provides these services to mobile stations over a wide geographic area," and that "[i]t uses 'low transmitting power' with automatic hand-off between base stations."

being reused in different cells within the service area."

Despite this concession, the Siting Council argues that because PCS systems are regulated by Part 24 of Title 47 of the Code of Federal Regulation, and not by Part 22, Sprint's PCS system does not fit into the definition of "cellular system" at 47 C.F.R. § 22.2 (1994).[3]

■ We disagree. "When interpreting a statute, courts should accord a statutory enactment its plain meaning.... We may not, by construction, read a provision into legislation that is not clearly stated therein." *Reliance Ins. Co. v. Reider*, 54 Conn.App. 77, 83, 730 A.2d 1229 (1999) (internal quotation marks and citations omitted). Our interpretation of § 16–50i(a)(6) begins and ends with the plain language of that provision and the provision it incorporates.

Section 16–50x of the Connecticut General Statutes vests exclusive jurisdiction over facilities siting in the Connecticut Siting Council. Section 16–50i(a)(6) defines facilities as "telecommunications towers, including associated telecommunications equipment ... used in a cellular system, *as defined in* ... Title 47, Part 22" (emphasis added). As both parties acknowledge, the plain language of 47 C.F.R. Part 22 clearly indicates that Sprint's PCS system fits into the definition of "cellular system," and this is the meaning we accord it. *See Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982). We therefore conclude that Sprint's PCS system constitutes a "facility" within the meaning of Connecticut General Statute § 16–50i(a)(6) and therefore that the Connecticut Siting Council has jurisdiction over that system.

## III. CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED.

---

3. Pursuant to Federal Rule of Appellate Procedure 28(j), the Council has brought to our attention two recently decided decisions of the United States District Court for the District of Connecticut in which the court reached the same conclusion. *SBA Communications, Inc. v. Zoning Comm'n of the Town of Franklin*, No. 3:00cv810 (AHN), slip op. at

1 (D.Conn. July 19, 2001) (Nevas, *J.*); *Conn. Architectural Towers, L.L.C. v. Town of Monroe Zoning Comm'n*, 3:01cv186 (AHN), slip op. (D.Conn. July 23, 2001) (Nevas, *J.*). We find these decisions unpersuasive because they disregard the plain language of the regulation.