TOWN OF WESTPORT *v.* CONNECTICUT SITING
COUNCIL ET AL.
(SC 16600)

CELLCO PARTNERSHIP *v.* ZONING BOARD OF
APPEALS OF THE TOWN OF WESTPORT
(SC 16601)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued March 13—officially released May 21, 2002

*Ira W. Bloom,* with whom was *Michael S. Toma,* for the appellant in each case (plaintiff town of Westport and defendant zoning board of appeals of the town of Westport).

*Kenneth C. Baldwin*, with whom, on the brief, were *Bradford S. Babbitt* and *Joey Lee Miranda*, for the appellee in both cases (Cellco Partnership).

*Mark F. Kohler*, assistant attorney general, for the appellee in the first case (defendant Connecticut siting council).

*Richard Blumenthal*, attorney general, and *Phillip Rosario* and *Neil Parille*, assistant attorneys general, filed a brief for the office of the attorney general as amicus curiae.

*Mary-Michelle U. Hirschoff* filed a brief for the Connecticut Conference of Municipalities as amicus curiae.

*Jonathan S. Zorn* and *Kenneth Ira Spigle*, pro hac vice, filed a brief for Sprint Spectrum, L.P., as amicus curiae.

*Opinion*

PER CURIAM. This is a consolidated appeal[1] emanating from a decision of the Connecticut siting council (council), the named defendant in the first case, approving, subject to certain modifications and conditions, an application of the defendant Cellco Partnership (Cellco), doing business as Bell Atlantic Mobile, filed pursuant to the Public Utility Environmental Standards Act; General Statutes § 16-50g et seq.; for a certificate of environmental compatibility and public need for the construction, operation and maintenance of a telecommunications tower facility (tower) to be located in the town of Westport (town). Cellco's application proposed to share the tower with four other wireless telecommu-

---

[1] The plaintiff in the first case, the town of Westport, and the defendant in the second case, the zoning board of appeals of the town of Westport, appealed from the trial court's judgments to the Appellate Court. We then transferred the consolidated appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

nication service providers,[2] including both cellular and noncellular providers. The council approved the application following three public hearings held pursuant to General Statutes § 16-50m,[3] at which the town participated and opposed Cellco's application. In addition, the

[2] The other providers are: Springwich Cellular Limited Partnership (Springwich); Sprint Spectrum, L.P., doing business as Sprint PCS (Sprint); Nextel Communications of the Mid-Atlantic, Inc., doing business as Nextel Communications (Nextel); and Omnipoint Communications, Inc. (Omnipoint). Springwich, like Cellco, is a federally licensed provider of cellular service. Sprint and Omnipoint are federally licensed providers of wireless service known as personal communications service, and Nextel is a federally licensed provider of wireless service known as enhanced specialized mobile radio service.

[3] General Statutes § 16-50m provides: "(a) Upon the receipt of an application for a certificate complying with section 16-50l, the council shall promptly fix a commencement date and location for a public hearing thereon not less than thirty days nor more than one hundred fifty days after such receipt. At least one session of such hearing shall be held at a location selected by the council in the county in which the facility or any part thereof is to be located after six-thirty p.m. for the convenience of the general public. After holding at least one hearing session in the county in which the facility or any part thereof is to be located, the council may, in its discretion, hold additional hearing sessions at other locations. If the proposed facility is to be located in more than one county, the council shall fix the location for at least one public hearing session in whichever county it determines is most appropriate, provided the council may hold hearing sessions in more than one county.

"(b) (1) The council shall hold a hearing on an application for an amendment of a certificate not less than thirty days nor more than sixty days after receipt of the application in the same manner as a hearing is held on an application for a certificate if, in the opinion of the council, the change to be authorized in the facility would result in any material increase in any environmental impact of such facility or would result in a substantial change in the location of all or a portion of the facility, other than as provided in the alternatives set forth in the original application for the certificate, provided the council may, in its discretion, return without prejudice an application for an amendment of a certificate to the applicant with a statement of the reasons for such return. (2) The council may hold a hearing on a resolution for amendment of a certificate not less than thirty days nor more than sixty days after adoption of the resolution in the same manner as provided in subsection (a) of this section. The council shall hold a hearing if a request for a hearing is received from the certificate holder or from a person entitled to be a party to the proceedings within twenty days after publication of notice of the resolution. Such hearing shall be held not less than thirty days

four other service providers participated as intervenors in the council proceedings.[4]

The council's decision approving the application was predicated on its determination that it had jurisdiction over the proposed facility because the facility would be "used in a cellular system" within the meaning of General Statutes § 16-50i (a) (6).[5] Indeed, the council asserted that, pursuant to General Statutes § 16-50x (a),[6]

nor more than sixty days after the receipt of such request in the same manner as provided in subsection (a) of this section. (3) The county in which the facility is deemed to be located for purposes of a hearing under this subsection shall be the county in which the portion of the facility proposed for modification is located.

"(c) The council shall cause notices of the date and location of each hearing to be mailed, within one week of the fixing of the date and location, to the applicant and each person entitled under section 16-50l to receive a copy of the application or resolution. The general notice to the public shall be published in not less than ten point, boldface type.

"(d) Hearings, including general hearings on issues which may be common to more than one application, may be held before a majority of the members of the council.

"(e) During any hearing on an application or resolution held pursuant to this section, the council may take notice of any facts found at a general hearing."

[4] Residents of Clinton Avenue and Residents of Sunny Lane, two interested groups representing residents in the areas likely to be affected by the proposed construction and operation of the tower, also participated in the proceedings.

[5] General Statutes § 16-50i (a) provides in relevant part: " 'Facility' means . . . (6) such telecommunication towers, including associated telecommunications equipment, owned or operated by the state, a public service company or a certified telecommunications provider or *used in a cellular system,* as defined in the Code of Federal Regulations Title 47, Part 22, as amended, which may have a substantial adverse environmental effect, as said council shall, by regulation, prescribe . . . ." (Emphasis added.)

A minor technical change, which is not relevant to this appeal, was made to § 16-50i (a) (6) in 1999, after the council had rendered its decision in this case. See Public Acts 1999, No. 99-286, § 8. References herein are to the current revision of the statute.

[6] General Statutes § 16-50x (a) provides: "Notwithstanding any other provision of the general statutes to the contrary, except as provided in section 16-243, the council shall have exclusive jurisdiction over the location and type of facilities and over the location and type of modifications of facilities subject to the provisions of subsection (d) of this section. In ruling on

it had *exclusive* authority, maintaining that the town does not retain jurisdiction to enforce its own municipal laws, despite the fact that the proposed tower would have both cellular *and* noncellular attachments. In addressing the merits of whether to issue the certificate, the council found that Cellco's existing facilities in the area did not provide adequate coverage or capacity in the northern portion of the town and noted similar deficiencies by the other carriers. The council determined that shared access to the tower by the cellular and noncellular service providers would be consistent with state law and policy promoting shared use. With regard to the potential environmental impact of the facility, the council made extensive findings supporting its conclusions that "[d]evelopment of the . . . site would involve minimal land disturbance and would not substantially alter the character of the natural resources including wetlands and watercourse, vegetative composition, and wildlife habitats. Furthermore, there are no environmental constraints at this site [that] would justify denial of this site." Finally, in response to concerns raised by the town, in order to minimize the impact on the residential neighborhood, the scenic quality of the Merritt Parkway and the Poplar Plains brook that traversed the proposed site, the council ordered that the tower be reduced in height and relocated on the lot further away from the inland wetlands and the watercourse than proposed by Cellco.

Following the council's approval of the application and grant of the certificate of environmental compatibility and public need, subject to certain conditions, Cellco

applications for certificates for facilities and on requests for shared use of facilities, the council shall give such consideration to other state laws and municipal regulations as it shall deem appropriate. Whenever the council certifies a facility pursuant to this chapter, such certification shall satisfy and be in lieu of all certifications, approvals and other requirements of state and municipal agencies in regard to any questions of public need, convenience and necessity for such facility."

proceeded with plans to construct the approved tower. It submitted the certificate to the town zoning enforcement officer in order to receive the zoning certification necessary to obtain a building permit. The zoning officer informed Cellco that its failure to comply with the town's zoning regulations prevented the issuance of the permit. Cellco appealed from the zoning enforcement officer's decision to the zoning board of appeals, which thereafter denied the appeal.

Pursuant to General Statutes §§ 4-183 and 16-50q,[7] the town appealed from the council's decision approving Cellco's application for the certificate of environmental compatibility, and pursuant to General Statutes §§ 8-8 and 8-10,[8] Cellco appealed from the zoning board of

[7] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

General Statutes § 16-50q provides: "Any party may obtain judicial review of an order issued on an application for a certificate or an amendment of a certificate in accordance with the provisions of section 4-183. Any judicial review sought pursuant to this chapter shall be privileged in respect to assignment for trial in the Superior Court."

[8] General Statutes § 8-8 (b) provides: "Except as provided in subsections (c), (d) and (q) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."

In 1999, a minor technical change, not relevant to this appeal, was made to § 8-8 (b). See Public Acts 1999, No. 99-238. References herein are to the current revision of the statute.

General Statutes § 8-10 provides: "The provisions of sections 8-8 and 8-9 shall apply to appeals from zoning boards of appeals, zoning commissions or other final zoning authority of any municipality whether or not such municipality has adopted the provisions of this chapter and whether or not the charter of such municipality or the special act establishing zoning in such municipality contains a provision giving a right of appeal from zoning boards of appeals or zoning commissions and any provision of any special act, inconsistent with the provisions of said sections, is repealed."

appeals' decision denying its appeal from the zoning officer's denial of its application for a certificate of zoning compliance. See *Westport* v. *Connecticut Siting Council*, 47 Conn. Sup. 382, 797 A.2d 655 (2001). Because the claims overlapped, the trial court consolidated the appeals.

The trial court first considered Cellco's claim that, because the council has exclusive jurisdiction over the siting of a telecommunications tower, pursuant to the Public Utility Environmental Standards Act, and the town had no direct role in the siting process, the town was not aggrieved and, therefore, the court did not have jurisdiction to consider the town's appeal. See *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, 214 Conn. 726, 729, 573 A.2d 736 (1990) (party must be aggrieved to have standing to bring administrative appeal). The trial court rejected that contention, however, concluding that, because, under the town's theory, a mixed use of cellular *and* noncellular providers, as in this case, would allow the town to apply its local laws and ordinances, the decision of the council interfering with the town's rights made it an aggrieved party.

Turning to the merits of the consolidated appeals, the trial court addressed the issue of whether the council improperly asserted its exclusive authority in locating the tower and, concomitantly, whether the zoning board of appeals improperly denied Cellco's appeal from the denial of its application for a certificate of zoning compliance necessary for the issuance of a building permit. The trial court determined, based upon its reading of §§ 16-50x (a) and 16-50i (a) (6),[9] in conjunction with General Statutes § 16-50p (b) (1) (B) and (b) (2),[10] that

---

[9] See footnotes 5 and 6 of this opinion.

[10] General Statutes § 16-50p (b) provides in relevant part: "(1) Prior to granting an applicant's certificate for a facility described in subdivision (5) or (6) of section 16-50i, the council shall examine, in addition to its consideration of subdivisions (1) to (5), inclusive, of subsection (a) of this

the legislature intended to give the council exclusive jurisdiction over telecommunication towers, including those that are shared by cellular and noncellular carriers. The trial court next considered the town's argument that the council's actions were procedurally and substantively illegal. Applying a limited standard of review pursuant to § 4-183 (j), the court examined whether the council's findings were supported by substantial evidence in the record and whether its decision approving the application subject to certain modifications reflected a proper application of the pertinent statutory factors set forth in the Public Utility Environmental Standards Act. Concluding that the council's actions were proper, the trial court next turned to the town's procedural claim that the council had acted improperly by deferring any consideration of the town's zoning regulations until after the council's approval of the

section . . . (B) whether such facility, if constructed, may be shared with any public or private entity which provides telecommunications or community antenna television service to the public, provided such shared use is technically, legally, environmentally and economically feasible at fair market rates, meets public safety concerns, and the parties' interests have been considered . . . .

"(2) When issuing a certificate for a facility described in subdivision (5) or (6) of subsection (a) of section 16-50i, the council may impose such reasonable conditions as it deems necessary to promote immediate and future shared use of such facilities and avoid the unnecessary proliferation of such facilities in the state. The council shall, prior to issuing a certificate, provide notice of the proposed facility to the municipality in which the facility is to be located. Upon motion of the council, written request by a public or private entity which provides telecommunications or community antenna television service to the public or upon written request by an interested party, the council may conduct a preliminary investigation to determine whether the holder of a certificate for such a facility is in compliance with the certificate. Following its investigation, the council may initiate a certificate review proceeding, which shall include a hearing, to determine whether the holder of a certificate for such a facility is in compliance with the certificate. In such proceeding, the council shall render a decision and may issue orders which it deems necessary to compel compliance with the certificate, which orders may include, but not be limited to, revocation of the certificate. Such orders may be enforced in accordance with the provisions of section 16-50u."

application for the certificate of environmental compatibility and public need. Following its examination of the record before the council, which included testimony and exhibits relating to the town's zoning and other regulatory concerns, the court rejected the town's procedural claim, concluding that the council had recognized the town's concerns, including the factors encompassing environmental and residential objections, prior to the application approval, as evidenced, in part, by it conditioning its approval on Cellco's compliance with some of the town's recommendations. Accordingly, the trial court, in separate judgments, dismissed the town's appeal and sustained Cellco's appeal. This appeal followed.

Our careful examination of the record, coupled with the briefs and arguments of the parties, persuades us that the judgments of the trial court should be affirmed. The question of aggrievement, and the issues pertaining to whether the council's jurisdiction was exclusive and whether there existed any prejudicial procedural impropriety, were properly resolved in the thoughtful and comprehensive memorandum of decision filed by the trial court. See *Westport* v. *Connecticut Siting Council*, supra, 47 Conn. Sup. 392–408. Because that memorandum of decision fully addresses the arguments raised in the present appeal, it would serve no useful purpose for us to repeat the discussion therein contained. Accordingly, we adopt the trial court's well reasoned decision. See *Walsh* v. *National Safety Associates, Inc.*, 241 Conn. 278, 282, 694 A.2d 795 (1997); *Molnar* v. *Administrator, Unemployment Compensation Act*, 239 Conn. 233, 235, 685 A.2d 1107 (1996); *Greater Bridgeport Transit District* v. *State Board of Labor Relations*, 232 Conn. 57, 64, 653 A.2d 151 (1995); *Advanced Business Systems, Inc.* v. *Crystal*, 231 Conn. 378, 380–81, 650 A.2d 540 (1994).

The judgments are affirmed.