JOHN CORCORAN ET AL. *v.* CONNECTICUT
SITING COUNCIL ET AL.*

TOWN OF NEW CANAAN *v.* CONNECTICUT
SITING COUNCIL ET AL.

Superior Court, Judicial District of New Britain
File Nos. CV-04-0527048S, CV-04-0527049S

Memorandum filed January 26, 2006

*Alan R. Spirer,* for the plaintiffs in the first case.

*Robert L. Marconi* and *John G. Haines,* assistant attorneys general, for the named defendant in each case.

*McCarter & English,* for the defendant Omnipoint Facilities Network 2, LLC, in each case.

---

\* Affirmed. *Corcoran* v. *Connecticut Siting Council,* 284 Conn. 455, 934 A.2d 825 (2007).

*Cummings & Lockwood,* for the plaintiff town of New Canaan in the second case.

HON. ROBERT SATTER, JUDGE TRIAL REFEREE. In these two cases consolidated before this court, the plaintiffs appeal the decision of the named defendant, the Connecticut siting council (council), dated February 18, 2004, approving the application of the defendant Omnipoint Facilities Network 2, LLC, a subsidiary of the defendant T-Mobile, USA, Inc. (T-Mobile), for a certificate of environmental compatibility and public need for the construction, operation and maintenance of a wireless telecommunications facility on Route 123 in the town of New Canaan.

Based upon the evidence presented at the hearing of this case before this court, the court finds that two of the plaintiffs, Wanda Corcoran and Lewis Bakes, have been financially injured by the decision of the council, and that all of the plaintiffs, including the town of New Canaan, were granted party status by the council in the proceedings before it. As a consequence, the court finds that all the plaintiffs have been aggrieved and have standing to prosecute this appeal.

The relevant facts are as follows. Pursuant to General Statutes § 16-50k, T-Mobile filed an application with the council for a certificate of environmental compatibility and public need for the construction, operation and maintenance of a wireless telecommunications facility on Route 123 in New Canaan. The facility was intended to fill a gap in coverage in that area of New Canaan.

The site selected is a twenty-three foot by nineteen foot area located on the property of the Country Club of New Canaan, Inc. (country club), on Route 123. It is adjacent to an existing Southern New England Telephone Company facility compound that is used by the local utility, and it would join the compound to create a 147 foot by nineteen foot compound. The site is

located in an area zoned as four acre residential. In the 2003 plan of conservation and development of the town of New Canaan, the site is within a location that is designated a scenic vista. There are eight residences within a 1000 foot radius of the proposed site, the nearest being 200 feet to the east of the proposed site. The tower will consist of a 110 foot steel silhouette pole, using stealth technology to accommodate three sets of antennas contained within the pole. The pole will be painted brown to blend in with the surrounding trees. Tree heights of surrounding trees range from seventy to ninety-five feet above the ground. The proposed tower's location is thirty-six feet from the edge of Smith Ridge Road. The structure will be designed with a midpoint break at the fifty-five foot level so that its fall zone would not extend onto the adjacent property across Smith Ridge Road, but it will still fall onto Smith Ridge Road.

T-Mobile investigated several other potential sites for the construction of the tower within the search ring. One alternate location was within the country club property and the other was on Michigan Road. The location within the country club property would be farther away from Route 123 and from nearby residences but would have a lower ground elevation and require a higher tower. The country club, however, would not lease property to T-Mobile for the tower other than on the designated site. The tower placed on Michigan Road would not provide adequate coverage of the target area.

The tower will be visible from sections of Smith Ridge Road (Route 123) to the northwest and southeast of the proposed site, and from a portion of Country Club Road and Oenoke Ridge Road. The tower can be seen from approximately fifteen to twenty homes on Smith Ridge Road and from approximately ten to fifteen houses on Oenoke Ridge Road. The council made a finding that the silhouette structure of the tower when

appropriately colored will not present the typical conspicuous tower appearance. The council did note, however, that a tower located at an interior site within the country club property would be aesthetically preferable to the proposed site.

After giving due notice of the application, the council held a public hearing on May 22, 2003, in New Canaan, and two hearings on July 3 and November 20, 2003, at the council's office in New Britain. The council and its staff made a field inspection of the site and flew a balloon to simulate the height of the tower.

Based upon the foregoing facts found by the council, it concluded that "the effects associated with the construction, operation, and maintenance of a telecommunications facility including effects on the natural environment; ecological integrity and balance; public health and safety; scenic, historic, and recreational value; forest and park; air and water purity; and fish and wildlife are not disproportionate either alone or cumulatively with other effects when compared to need, are not in conflict with the policies of the [s]tate concerning such effects, and are not sufficient reason to deny the application and therefore directs that the [c]ertificate of [e]nvironmental [c]ompatibility and [p]ublic [n]eed . . . be issued to . . . [T-Mobile] for the construction, maintenance and operation of a wireless telecommunications facility [at] 95 Country Club Road, New Canaan, Connecticut." The council imposed the following conditions: that the tower be constructed as a silhouette structure no taller than 110 feet above ground level; that antennas be installed on the inside of the silhouette structure; that T-Mobile consult with the town of New Canaan and landowners to decide on the color of the structure; and that T-Mobile permit public or private entities to share space on the proposed tower for fair consideration and provide reasonable

space on the tower at no compensation by any municipal antennas, provided that such antennas are compatible with the structural integrity of the tower.

The plaintiffs appeal that decision on the grounds that it is arbitrary, capricious and in abuse of discretion, and that it contains errors of law in light of the whole record, on the following grounds: (1) the decision violates the New Canaan zoning regulations; (2) the decision violates the New Canaan plan of conservation and development by impairing a scenic vista; (3) the decision conflicts with the department of transportation (department) safety standards; (4) the decision violates General Statutes § 16-50p (g) in that the council gave too much weight to the fact that T-Mobile had a lease on the designated site; and (5) there are feasible and prudent alternatives to the approved location.

I

STANDARD OF REVIEW

Pursuant to General Statutes § 16-50q, the standards of General Statutes § 4-183 of the Uniform Administrative Procedure Act; General Statutes §§ 4-166 through 4-189; govern the consideration of this appeal. The principles are well established. It is not the function of the trial court to retry the case or to substitute its judgment for that of the administrative agency. *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control,* 216 Conn. 627, 637, 583 A.2d 906 (1990). A court shall affirm the decision of an agency unless the court finds that the agency's decisions are in violation of constitutional or statutory provisions, in excess of the statutory authority of the agency, clearly erroneous in view of the reliable, probative and substantive evidence of the whole record, or arbitrary, capricious or characterized by abuse of discretion. General Statutes § 4-183 (j). The burden is clearly on the plaintiffs to establish these grounds in challenging an administrative decision.

*Blaker* v. *Planning & Zoning Commission*, 212 Conn. 471, 478, 562 A.2d 1093 (1989); *Lovejoy* v. *Water Resources Commission*, 165 Conn. 224, 229, 332 A.2d 108 (1973).

## II

## DISCUSSION

### A

#### The Issue of Violation of the New Canaan Zoning Regulations

Section 60-30.7 C (2) (a) of the New Canaan zoning regulations mandates that all towers be set back a minimum of "one hundred and twenty-five percent (125%) of the height of the tower from an adjoining lot line." The T-Mobile tower, as approved by the council, will be 110 feet high and located only thirty-six feet from Route 123. Sections of Route 123 and neighboring residential properties are located within the fall zone of the tower. As a consequence, the plaintiffs complain that the tower violates a specific section of the New Canaan zoning regulations. However, General Statutes § 16-50x (a) provides in relevant part: "Notwithstanding any other provision of the general statutes to the contrary, except as provided in section 16-243, the council shall have *exclusive* jurisdiction over the location and type of facilities and over the location and type of modifications of facilities subject to the provisions of subsection (d) of this section. In ruling on applications for certificates or petitions for a declaratory ruling for facilities and on requests for shared use of facilities, the council shall give such consideration to other state laws and *municipal regulations as it shall deem appropriate. . . .*" (Emphasis added.)

The courts have interpreted this provision as giving the council the power to override municipal zoning provisions. *Westport* v. *Connecticut Siting Council*, 47

Conn. Sup. 382, 394, 797 A.2d 655 (2001), aff'd, 260 Conn. 266, 796 A.2d 510 (2002); see also *Sprint Spectrum, LP* v. *Connecticut Siting Council,* 274 F.3d 674, 677 (2d Cir. 2001). Thus, it was not error for the council to issue a decision conflicting with the New Canaan zoning regulations. Section 16-50x (a) clearly contemplates that, in the event of such a conflict, the council's position should prevail. It should be further noted that the council did consider the town zoning regulations because they were presented to the council as part of T-Mobile's application.

## B

The Issue of Impairing the Scenic Vista in Violation of the New Canaan Plan of Conservation and Development

Section 16-50p (a) (3) (B) provides that in reaching a decision as to the public need for a facility, the council should take into account the "scenic" values to determine why the adverse effects upon such values are not sufficient reason to deny the application.

The New Canaan plan of conservation and development designates the area where the tower is to be located as a "scenic viewpoint" for a "scenic vista." The council considered a good deal of evidence as to the impact of the tower in the residential area and specifically its location as a scenic vista. The council imposed conditions as to its design and color to minimize the tower's visibility. The council had to balance these factors against the public need for the telecommunications facility, and in the end concluded that the effects on scenic values were not disproportionate "when compared to need" and "are not sufficient reason to deny the application," as stated in its decision and order. The council thus performed its statutory obligation under § 16-50p (a) to balance competing concerns against the need for the coverage, and did not abuse its discretion.

## C

### The Issue of the Council's Decision Conflicting with the Department's Safety Standards

General Statutes § 16-50j (h) provides in relevant part: "Prior to commencing any hearing pursuant to section 16-50m, the council shall consult with and solicit written comments from the . . . Department of Transportation. . . . Subsequent to the commencement of the hearing, said [department] . . . may file additional written comments with the council within such period of time as the council designates. All such written comments shall be made part of the record provided by section 16-50o. . . ."

The department submitted a comment to the council that provided as follows: "The placement of a telecommunication tower must be far enough away from a State of Connecticut roadway to protect the travelling public should the tower ever collapse. A minimum distance from the roadway of the tower height is required." In a subsequent communication to the council, the department stated that it is charged under General Statutes § 13b-4 to review proposals that may have an impact upon the safe operation of the highway system, including the placement of towers in proximity to critical highway infrastructure. It went on to state that the department believes "that its comments to the [c]ouncil concerning the potential impact upon the safety of the traveling public, including comments on the fall zone of a telecommunications tower, should weigh heavily in the [c]ouncil's deliberation." However, even the department itself in the last letter to the council recognized that it "does not claim to have express jurisdiction over the height of a telecommunications tower located on private property except for towers located in close proximity to an airport where the height of the tower may pose a risk to air safety." With respect to trees,

the letter went on to state that "[t]he [department] must balance the safety of the traveling public . . . against the aesthetic characteristics of the roadway . . . ." (Citations omitted.) Thus, T-Mobile's application does not invoke any rights of the department other than the right of the department to submit comments.

The application does not propose to install the tower on state property within a highway right-of-way or propose a new curb cut access point from a state highway; rather the tower is located on private property outside of the Route 123 highway right-of-way. Thus, while the council is obligated to consult with and to solicit comments from the department, nothing in the statute requires the council to abide by the comments of the department. In fact, there can be no doubt that the department's written comments in this matter are not controlling on the council because General Statutes § 16-50w specifically provides that "[i]n the event of any conflict between the provisions of this chapter and any provisions of the general statutes, as amended, or any special act, this chapter shall take precedence."

Moreover, the record reveals that there are many tower facilities all over Connecticut that are safely being maintained and operated by wireless carriers and tower operators adjacent to, and in some cases even within, state highway rights-of-way. As a consequence, the council's decision to take into account the department's comments but not to abide by them, was not an abuse of discretion.

D

The Issue of the Council's Decision Violating the Statutory Mandate that Its Decision Not be Unduly Influenced by the Lease Agreement

Section 16-50p (g) provides: "In making its decision as to whether or not to issue a certificate, the council

shall in no way be limited by the fact that the applicant may already have acquired land or an interest therein for the purpose of constructing the facility which is the subject of its application." The plaintiffs argue that the council's approval of the application rested heavily on the fact that T-Mobile held a lease for the site and could not negotiate an alternate site on the property with the country club. Section 16-50p (g) specifically forbids the council from allowing a property interest to influence its decision, and the plaintiffs claim that this is precisely what the council did, which constituted an abuse of its discretion.

The plaintiffs misconstrue the statute. The phrase "in no way be limited" contained in § 16-50p (g) implies that the legislature did not want the council to be bound by an applicant's alleged acquisition of an interest in land, but the council was not prohibited from considering such an interest in determining whether the certificate should be issued. The language of § 16-50p (g) is that of an enlargement of the council's discretion, not a limitation, permitting but not obligating the council to consider the likelihood of the applicant securing the proposed site.

In this case, the plaintiffs would like the tower located on other property of the country club. The country club refused to lease a portion of its interior property, and the plaintiffs paint the country club as the bete noire for this refusal. The council has no power to compel it to do so. Moreover, the council was not overly induced to approve the location because T-Mobile had leased the particular site. The evidence was that, in order to provide coverage to the area and eliminate a coverage gap that existed in the heavy traveled portion of New Canaan, the tower had to be placed within a certain radius, and that the specific location chosen met that requirement.

E

## The Issue of Feasible and Prudent Alternatives to the Approved Location

The plaintiffs argue that the location of the tower on other property of the country club would have less impact on the traveling public to use Route 123 and "represents a feasible and prudent alternative to the approved location." The council itself conceded in its findings that the "tower located at an interior site within the [c]ountry [c]lub property would be aesthetically preferable to the proposed site." The council also found, however, that T-Mobile "could not reach an agreement with the [c]ountry [c]lub regarding an alternate interior location for a facility." Since T-Mobile and the country club could not reach an agreement and since the council has no power to force the country club to agree, the country club's property was not a feasible alternative.

The court finds no merit to all of the plaintiffs' contentions and, as a consequence, dismisses the appeals.