******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TOWN OF MIDDLEBURY ET AL. *v.* CONNECTICUT
SITING COUNCIL
(SC 19799)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Argued January 17—officially released June 27, 2017*

*Stephen L. Savarese*, with whom was *Dana D'Angelo*, town attorney, for the appellants (plaintiffs).

*Robert L. Marconi*, assistant attorney general, with whom were *Clare E. Kindall*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, for the appellee (defendant).

*Philip M. Small* and *Franca L. DeRosa*, with whom, on the brief, was *Kyle R. Johnson*, for the appellee (intervening defendant).

*Opinion*

McDONALD, J. This appeal concerns a proviso contained in General Statutes § 16-50p,[1] which precludes the defendant, Connecticut Siting Council, from granting a certificate of environmental compatibility and public need (certificate) for operation of an electric generating or storage facility unless the council, among other things, "considers neighborhood concerns" with respect to specified factors. The plaintiffs, the town of Middlebury and sixteen residents and entities situated in Middlebury and adjacent towns,[2] appeal from the judgment of the trial court dismissing their appeal from the decision of the council granting the petition of CPV Towantic, LLC (CPV),[3] to open and modify a certificate for an electric generating facility. The plaintiffs' principal claim is that the trial court improperly determined that the council adequately had considered neighborhood concerns, despite the absence of express findings or analysis in its decision addressing the plaintiffs' concerns about adverse impacts from the facility. We affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history. On June 23, 1999, the council granted CPV's predecessor a certificate, pursuant to General Statutes (Rev. to 1999) § 16-50k (a), permitting the construction, maintenance, and operation of a 512 megawatt electric generating facility in the town of Oxford. A citizen's group unsuccessfully challenged that decision. See *Citizens for the Defense of Oxford* v. *Connecticut Siting Council*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. CV-99-0497075-S (November 14, 2000). As of late 2014, the council had granted CPV several extensions of time to complete construction of the facility, but it was not yet completed and operational.

On November 3, 2014, CPV submitted a petition to open and modify the certificate based on changed conditions, pursuant to General Statutes § 4-181a (b). The changed conditions identified therein included a greater need for electric capacity, the development of the electric market, advances in the use of renewable resources and combustion turbine technology, and more rigorous environmental regulations. On the basis of the identified changed conditions, CPV sought permission to update and upgrade its proposed electric generating facility to, among other things, provide approximately 50 percent more electricity (from 512 to 785 megawatts), expand its site from approximately twenty acres to twenty-six acres, and reconfigure its buildings and stacks for a lower profile.

The council granted the petition as to the request to open the certificate, but opened the original docket in its entirety and thus did not limit the proceedings to the changed conditions alleged in CPV's petition. As a

consequence, the plaintiffs and others sought to oppose the facility on the basis of other changed conditions that they claimed weighed against the facility as originally planned and as proposed. One of the individual plaintiffs was designated a party to the proceedings, other plaintiffs, including the town of Middlebury, were permitted to intervene in the proceedings, and others participated in the process by submitting public comments and/or speaking at the public hearings.

Between January and March, 2015, the council conducted a public inspection of the site and held seven evidentiary hearings. At the evidentiary hearings, the parties and intervenors were permitted to submit evidence and question witnesses. In addition, the council sought information from parties and intervenors through interrogatories and requests for late-filed exhibits. The plaintiffs raised a broad range of concerns on the purported adverse effects of the facility on the environment and public safety, including, but not limited to, the impact of harmful pollutants on nearby residents, the effect of increased pollution, noise, and traffic on the rural setting of the neighboring localities, and the proximity of the facility to the Waterbury-Oxford Airport and its attendant risk to aviation safety.

On May 14, 2015, the council issued a written decision granting the petition as to the request to modify the certificate and approving CPV's proposed modifications, with certain conditions. The decision was issued in three parts: "Findings of Fact" (sixty-three pages containing 314 separate findings); "Opinion" (ten pages of ultimate findings of fact and legal conclusions); and "Decision and Order." The council determined therein that conditions had changed since it issued the original certificate in 1999, citing most, but not all, of the changes alleged in CPV's petition. It acknowledged the anticipated adverse effects of the facility, but concluded that such effects were "not disproportionate either alone or cumulatively with other effects when compared to [the] benefit" and were therefore "not sufficient reason to deny the proposed project." The council concluded: "[T]he current CPV proposal significantly improves on th[e] original project. CPV's project utilizes state-of-the-art combustion technology to increase the reliability of the power supply. It is equally as protective of natural resources as the approved project, and, in a few cases, more so, as the technical standards for measuring, monitoring and maintaining protection have risen. *Notwithstanding continued public opposition, which the [c]ouncil both acknowledges and has tried to use constructively in this decision*, it is the [c]ouncil's opinion that improvements offered by CPV's proposal do provide significant benefit to the public." (Emphasis added.)

The plaintiffs appealed from the council's decision to the Superior Court pursuant to General Statutes § 4-

183 (a). On appeal, the plaintiffs principally claimed that (1) the council did not follow its statutory directive under § 16-50p (c) (1) to consider neighborhood concerns, (2) the council violated the plaintiffs' due process rights through numerous decisions during the proceedings that impaired their ability to make their case, and (3) the council's decision granting the certificate modification was not supported by substantial evidence.

After oral argument, the trial court dismissed the appeal. The trial court concluded that the council had "extensively considered neighborhood concerns" because "there can be no genuine dispute that the council heard and admitted massive amounts of evidence about neighborhood concerns and made extensive findings on these matters in its decision." The court deemed the plaintiffs' due process and substantial evidence claims abandoned due to inadequate briefing, but nonetheless explained why those claims failed on the merits. The trial court concluded that "[t]he plaintiffs enjoyed a full opportunity to present their case" and, in any event, had failed to identify any harm flowing from the rulings they challenged. In addition, the trial court concluded that there was substantial evidence to support the council's decision approving CPV's modifications. Accordingly, the trial court rendered judgment dismissing the plaintiffs' appeal.

The plaintiffs appealed to the Appellate Court, challenging the trial court's decision on the merits of their neighborhood concerns claim and on the abandonment of their due process and substantial evidence claims. We thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

I

The plaintiffs' principal claim is that the trial court improperly concluded that the council had discharged its duty under § 16-50p (c) (1) to consider neighborhood concerns in granting CPV's petition to open and modify its certificate. They disagree that it is sufficient for the council to entertain their evidence and broadly acknowledge their concerns. They contend, in effect, that, in order to "consider" neighborhood concerns, the council was required to formally acknowledge their individualized concerns in its decision and to articulate a response, if not to all of them, at least to their major concerns. Although they advance a broad attack on the council's decision, the plaintiffs specifically identify only one concern that they claim was ignored by the council—the possible effect of the facility's air emissions on local production of hay and timber. We disagree that the council failed to satisfy its statutory obligation to consider neighborhood concerns.

The present case requires us both to discern the meaning of a statute and to ascertain whether that stan-

dard was met under the facts of the present case. As such, our analysis of § 16-50p (c) (1) is guided by General Statutes § 1-2z and well established principles of statutory construction. See *Lieberman* v. *Aranow*, 319 Conn. 748, 756–58, 127 A.3d 970 (2015); see also *Indian Spring Land Co.* v. *Inland Wetlands & Watercourses Agency*, 322 Conn. 1, 11, 145 A.3d 851 (2016). "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *FairwindCT, Inc.* v. *Connecticut Siting Council*, 313 Conn. 669, 680, 99 A.3d 1038 (2014). Statutory construction presents a question of law over which we exercise plenary review. See *Indian Spring Land Co.* v. *Inland Wetlands & Watercourses Agency*, supra, 11.

Section 16-50p (c) (1), part of the Public Utility Environmental Standards Act (act) under chapter 277a of the General Statutes, provides in relevant part: "The council shall not grant a certificate for a facility . . . either as proposed or as modified by the council, unless it finds and determines a public benefit for the facility and *considers neighborhood concerns* with respect to the factors set forth in subdivision (3) of subsection (a) of this section, including public safety." (Emphasis added.)

We begin by acknowledging what is and is not at issue. There is no claim in the present case that the concerns raised by the plaintiffs failed to relate to the factors set forth in § 16-50p (a) (3), which focuses on environmental impact and public safety. See footnote 1 of this opinion. Nor is there a claim that the concerns raised were not ones affecting the "neighborhood," a term that is not defined in the act. Instead, the present case turns on the nature of the council's obligation to "[consider] neighborhood concerns . . . ." General Statutes § 16-50p (c) (1).

Nowhere in the act is the term "consider" defined, nor does the act elaborate procedural requirements that might indicate a meaning specific to this context. "In the absence of a definition of terms in the statute itself, [w]e may presume . . . that the legislature intended [a word] to have its ordinary meaning in the English language, as gleaned from the context of its use. . . . Under such circumstances, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Studer* v. *Studer*, 320 Conn. 483, 488, 131 A.3d 240 (2016); see General Statutes § 1-1 (a) (directing courts to use common meaning). As the trial court observed, and the plaintiffs themselves acknowledge and accept, "consider" is defined in Webster's Third New International Dictionary (1986) as "to reflect on: think about with a degree of care or caution . . . ." The American Heritage Dictionary of the English Language (5th Ed. 2011) similarly defines consider as "[t]o think carefully

about," "[t]o take into account," and "[t]o look at thoughtfully . . . ." These definitions simply refer to a deliberative process.

Thus, although the council is required to take neighborhood concerns into account, notably absent from § 16-50p (c) (1) is any requirement that the council expressly articulate any such reflections or deliberations. By contrast, in that same subdivision of the statute, the legislature has provided that the council cannot grant a certificate for an electric generating facility "unless it *finds and determines* a public benefit for the facility . . . ." (Emphasis added.) General Statutes § 16-50p (c) (1). Similarly, § 16-50p (a) (3) (B)—incorporated by reference in § 16-50p (c) (1)—directs the council to "*find and determine* . . . [t]he nature of the probable environmental impact of the facility . . . including a specification of every significant adverse effect" with respect to a nonexhaustive list of factors. (Emphasis added.) If the legislature intended for the council to make specific findings and determinations regarding neighborhood concerns, it presumably would have used similar language. Its failure to do so suggests an intent to place a lesser burden on the council with respect to neighborhood concerns.

Indeed, in other contexts, the legislature has required the fact finder both to "consider" specified matters and to make written findings relating to the considered matters. See, e.g., General Statutes § 19a-639 (a) (providing that, in deciding whether to grant certificate of need with respect to health-care facilities, Office of Health Care Access "shall take into consideration and make written findings" concerning enumerated guidelines and principles); see also General Statutes § 1-110a (b) (in determining whether public official and state or municipal employee convicted of crime related to his or her office should have his or her pension revoked or reduced, "the Superior Court shall consider and make findings" on listed factors); General Statutes § 17a-112 (k) (in determining whether termination of parental rights is in best interest of child, "the court shall consider and shall make written findings" concerning listed factors). The absence of a similar requirement in § 16-50p (c) (1) as to neighborhood concerns evidences an intention that such concerns inform the council's decision to the extent that they are material but does not require the council to articulate how and to what extent each concern impacted its decision.

This interpretation of § 16-50p (c) (1) is consistent with how our courts and other courts have interpreted statutes with similar language mandating consideration of particular information. See, e.g., *Weiman* v. *Weiman*, 188 Conn. 232, 234, 449 A.2d 151 (1982) (under General Statutes § 46b-82, providing that court " 'shall consider' " enumerated factors in determining whether to award alimony, "[t]he court is not obligated to make

express findings on each of the statutory criteria"); *Corcoran* v. *Connecticut Siting Council*, 50 Conn. Supp. 443, 448–49, 934 A.2d 870 (2006) (under General Statutes § 16-50x [a], providing in relevant part that council " 'shall give such consideration to other state laws and municipal regulations as it shall deem appropriate,' " court concluded that council "did consider the town zoning regulations because they were presented to the council as part of [the] application" [emphasis omitted]), aff'd, 284 Conn. 455, 934 A.2d 825 (2007); see also *Gonzalez* v. *Napolitano*, 684 F. Supp. 2d 555, 562–63 (D.N.J. 2010) (collecting federal cases interpreting requirement to "consider" specified matter), aff'd, 678 F.3d 254 (3d Cir. 2012); *Central Valley Chrysler-Jeep* v. *Witherspoon*, 456 F. Supp. 2d 1160, 1173 (E.D. Cal. 2006) ("a congressional requirement that a decision maker 'consider' a factor . . . requires an actor to merely 'investigate and analyze' the specified factor, but not necessarily act upon it").

In sum, the requirement to consider neighborhood concerns only obliges the council to reflect on the concerns of the neighborhood and take them into account when rendering a decision. There is no support for the more onerous interpretation proffered by the plaintiffs.

Nevertheless, the plaintiffs argue that the council failed to satisfy its obligations even under this more limited interpretation because its failure to mention "neighborhood" anywhere in its findings of fact or decision suggests that the council did not consider neighborhood concerns. We disagree.

We first observe that "there is a strong presumption of regularity in the proceedings of a public agency, and we give such agencies broad discretion in the performance of their administrative duties, provided that no statute or regulation is violated." *Forest Walk, LLC* v. *Water Pollution Control Authority*, 291 Conn. 271, 286, 968 A.2d 345 (2009); see also *Brecciaroli* v. *Commissioner of Environmental Protection*, 168 Conn. 349, 356, 362 A.2d 948 (1975) ("[i]t must be presumed . . . that the defendant's denial of the application [to conduct a regulated activity on wetlands] was based on the standards set forth in § 22a-33 of the General Statutes, which requires the hearing officer to 'consider the effect of the proposed work with reference to the public health and welfare, marine fisheries, shell-fisheries, wildlife, the protection of life and property from flood, hurricane and other natural disasters, and the public policy set forth in sections 22a-28 to 22a-35, inclusive' "). This presumption is supported by the council's statement in its decision regarding "public opposition, which the [c]ouncil both acknowledges and has tried to use constructively in this decision . . . ." To place weight on the fact that the council declined to label the public opposition as "neighborhood concerns" would elevate form over substance.

More fundamentally, it is plain that the council did address specific neighborhood concerns presented by the parties and intervenors in its 314 findings of fact and detailed decision. The council made specific findings with respect to the factors in § 16-50p (a) (3) (B) that would have the most profound effect on persons and entities from the surrounding localities, including on issues of air emissions, visibility, noise, traffic, wetlands, wildlife, and public safety. In addition, the council noted that it tried to incorporate those concerns raised in the public opposition to improve the project. Indeed, the only concern that the plaintiffs specifically identify that the council purportedly ignored was the possible effect of air emissions from the facility on the local production of hay and timber. In its air quality and vegetation impact analysis, however, the council specifically found that the deposition rates of pollutants were considerably less than the United States Environmental Protection Agency's screening criteria for protection of deposition to soils and vegetation uptake, and that the deposition rates were lower than what was associated with the previously approved project.

Simply put, the plaintiffs have not met their burden of proving that the council acted contrary to law and ignored the neighborhood concerns that were presented to it. See *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 343–44, 757 A.2d 561 (2000). Accordingly, we conclude that the trial court properly concluded that the council considered neighborhood concerns in accordance with § 16-50p (c) (1).

II

The plaintiffs also claim that the trial court improperly concluded that they had abandoned their due process and substantial evidence claims due to inadequate briefing. CPV contends, however, that this court cannot afford any practical relief on this claim because the plaintiffs have failed to challenge the trial court's alternative conclusions rejecting the claims on the merits. We agree with CPV. Consequently, we cannot review the plaintiffs' claim related to inadequate briefing, as it is moot.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . ." (Internal quotation marks omitted.) *In re Jorden R.*, 293 Conn. 539, 555, 979 A.2d 469 (2009). It is well settled that "[a]n issue is moot when the court can no longer grant any practical relief." (Internal quotation marks omitted.) *Wyatt Energy, Inc.* v. *Motiva Enterprises, LLC*, 81 Conn. App. 659, 661, 841 A.2d 246 (2004). "In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Internal quotation marks omitted.) *In re Jorden R.*, supra, 556.

"Where an appellant fails to challenge all bases for a trial court's adverse ruling on his claim, even if this court were to agree with the appellant on the issues that he does raise, we still would not be able to provide [him] any relief in light of the binding adverse finding[s] [not raised] with respect to those claims." (Internal quotation marks omitted.) *State* v. *Lester*, 324 Conn. 519, 526–27, 153 A.3d 647 (2017). In such cases, the challenged ground is rendered moot. See *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 379 n.23, 119 A.3d 462 (2015) ("where alternative grounds found by the reviewing court and unchallenged on appeal would support the trial court's judgment, independent of some challenged ground, the challenged ground that forms the basis of the appeal is moot because the court on appeal could grant no practical relief to the complainant" [internal quotation marks omitted]); *State* v. *Abushaqra*, 151 Conn. App. 319, 326, 96 A.3d 559 (2014) (writ of error dismissed as moot where plaintiff in error failed to contest alternative holding of trial court).

In the present case, the trial court decided the plaintiffs' due process and substantial evidence claims both on procedural grounds and on the merits. In their brief before this court, the plaintiffs do not challenge the trial court's conclusions that they had failed to establish the existence of a due process violation and that there was substantial evidence in the record to support the council's determination. As such, we cannot afford the plaintiffs any practical relief because, even if we were to agree that the trial court abused its discretion in concluding that they had abandoned their due process and substantial evidence claims due to inadequate briefing, the trial court's unchallenged decision on the merits would stand. Accordingly, the plaintiffs' claim is moot, and this court lacks subject matter jurisdiction to consider it.

The judgment is affirmed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Eveleigh, McDonald, Espinosa and Robinson. Although Chief Justice Rogers was not present at oral argument, she has read the briefs and appendices, and has listened to a recording of oral argument prior to participating in this decision.

[1] General Statutes § 16-50p provides in relevant part: "(a) (1) In a certification proceeding, the council shall render a decision upon the record either granting or denying the application as filed, or granting it upon such terms, conditions, limitations or modifications of the construction or operation of the facility as the council may deem appropriate. . . .

"(3) The council shall file, with its order, an opinion stating in full its reasons for the decision. The council shall not grant a certificate, either as proposed or as modified by the council, unless it shall find and determine:

"(A) Except as provided in subsection (b) or (c) of this section, a public need for the facility and the basis of the need;

"(B) The nature of the probable environmental impact of the facility alone and cumulatively with other existing facilities, including a specification of every significant adverse effect, including, but not limited to, electromagnetic fields that, whether alone or cumulatively with other effects, impact on, and conflict with the policies of the state concerning the natural environment,

ecological balance, public health and safety, scenic, historic and recreational values, forests and parks, air and water purity and fish, aquaculture and wildlife;

"(C) Why the adverse effects or conflicts referred to in subparagraph (B) of this subdivision are not sufficient reason to deny the application . . . .

"(c) (1) The council shall not grant a certificate for a facility described in subdivision (3) of subsection (a) of section 16-50i, either as proposed or as modified by the council, unless it finds and determines a public benefit for the facility and considers neighborhood concerns with respect to the factors set forth in subdivision (3) of subsection (a) of this section, including public safety. . . ."

Although § 16-50p has been amended by the legislature several times since the events underlying the present case; see, e.g., Public Acts 2016, No. 16-163, §§ 8 and 9; the amendments have no bearing on the merits of the appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] In addition to the town of Middlebury, the plaintiffs are: Raymond Pietrorazio, Marian R. Larkin, Wayne McCormack, Paul Coward, Peter Polstein, John D. Retartha, Jay Halpern, Greenfields, LLC, Middlebury Land Trust, Inc., Oxford Greens Association, Inc., Naugatuck River Revival Group, Inc., Chester Cornacchia, Lake Quassapaug Association, Inc., Lake Quassapaug Amusement Park, Inc., Middlebury Bridle Land Association, Inc., and Oxford Flying Club, Inc. We note that some of the plaintiffs were made parties to the proceeding before the council, others were permitted to intervene in the proceeding, and others simply submitted comments or offered statements at the public hearing. Whether all of these plaintiffs are aggrieved by the council's decision is unclear. Nonetheless, we note that one of the plaintiffs, the town of Middlebury, had been determined to be aggrieved in two prior proceedings involving the proposed electric generating facility at issue. See *Middlebury* v. *Connecticut Siting Council*, Superior Court, judicial district of New Britain, Docket No. CV-07-4013143-S (November 1, 2007) (44 Conn. L. Rptr. 432, 433); *Middlebury* v. *Connecticut Siting Council*, Superior Court, judicial district of New Britain, Docket No. CV-01-0508047-S (February 27, 2002). In the present case, one brief was filed on behalf of all of the plaintiffs. Accordingly, we need not consider whether all of the plaintiffs are aggrieved. See *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 529 n.3, 600 A.2d 757 (1991) (declining to resolve whether all plaintiffs were aggrieved when one plaintiff's standing to appeal is established).

[3] CPV was given permission to intervene as a party defendant after the plaintiffs appealed from the council's decision granting CPV's petition.