## CLAUDE M. BROUILLARD *v.* CONNECTICUT SITING COUNCIL ET AL.*

Superior Court, Judicial District of New Britain
File No. HHB CV-09-5014478-S

Memorandum filed October 7, 2010

*Proceedings*

*Claude M. Brouillard,* pro se, the plaintiff.

*Robert L. Marconi,* assistant attorney general, for the named defendant.

*Joey Lee Miranda* and *Lauren Vinokur,* for the defendant Cellco Partnership.

VACCHELLI, J. This case is an administrative appeal from the August 13, 2009 decision of the Connecticut

---

* Affirmed. *Brouillard* v. *Connecticut Siting Council,* 133 Conn. App. 851, 38 A.3d 174 (2012).

Siting Council (Siting Council) granting a certificate of environmental compatibility and public need for the construction, maintenance and operation of a telecommunications facility at 199 Town Farm Road in Farmington. The facility is a cell phone tower to be disguised as a pine tree. The applicant before the Siting Council was Cellco Partnership doing business as Verizon Wireless (Cellco). Cellco and the Siting Council are the defendants in this appeal. The plaintiff, Claude Brouillard, opposed the application at the application hearing before the Siting Council and, in this case, he appeals the Siting Council's decision to the Superior Court.[1] The defendants have filed motions to dismiss (Doc. #117.00 and Doc. #120.00) arguing that the plaintiff lacks standing to appeal because he is not "aggrieved" under the applicable legal tests. The court held a hearing on the aggrievement issue on August 13, 2010, at which time Brouillard testified. The court also heard the testimony of Susan Edelson and her husband, Dr. David R. Edelson. Additionally, the court reviewed the record, and the written submissions of the parties on file and the exhibits submitted by the parties at the hearing. The defendants were represented by counsel in this matter. The plaintiff was self-represented. The parties also filed extensive sets of briefs on the topics. For the following reasons, the court agrees with the defendants. Therefore, the motions to dismiss are granted.

I

Appeals from decisions of the Siting Council are governed by the Uniform Administrative Procedure Act (UAPA). General Statutes § 16-50q. The UAPA generally requires that only persons who are "aggrieved" can

---

[1] This case has been consolidated with the case of *Edelson* v. *Connecticut Siting Council,* Superior Court, judicial district of New Britain, Docket No. HHB CV-09-5014477-S. Susan Edelson also was a party opponent to the application at the Siting Council proceedings, and she also filed an appeal opposing the Siting Council's decision in this same matter.

appeal. The UAPA provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ." General Statutes § 4-183 (a). This rule applies to all state agency proceedings not expressly exempted by the UAPA. General Statutes § 4-185 (b). The aggrievement rule is well settled. There are two general types of aggrievement, namely, statutory and classical; either type will establish standing to appeal. *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 92, 971 A.2d 1 (2009). "[I]n cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation. . . . [T]he existence of statutory standing . . . depends on whether the interest sought to be protected by the [plaintiff] is arguably within the zone of interests to be protected or regulated by the statute . . . ." (Internal quotation marks omitted.) *Pascarella* v. *Commissioner of Revenue Services*, 119 Conn. App. 771, 774, 989 A.2d 1092, cert. denied, 296 Conn. 904, 992 A.2d 329 (2010). "Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the [controversy], as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the [alleged conduct] has specially and injuriously affected that specific personal or legal interest." (Internal quotation marks omitted.) Id., 773–74. "If a party is found to lack [aggrievement], the court is without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) Id., 773. The plaintiff claims that he qualifies under both statutory and classical aggrievement tests in this case. The court finds that he qualifies under neither for the following reasons.

## II

With regard to statutory aggrievement, the plaintiff argues that he qualifies because he was granted party status before the Siting Council, and parties are granted an automatic right to appeal, i.e., statutory aggrievement with no other showing of classical aggrievement required, pursuant to § 16-50q. That statute provides: "Any party may obtain judicial review of an order issued on an application for a certificate or an amendment of a certificate in accordance with the provisions of section 4-183. Any judicial review sought pursuant to this chapter shall be privileged in respect to assignment for trial in the Superior Court." General Statutes § 16-50q.

It is true that the plaintiff was granted party status by the Siting Council at the hearing in this matter before that agency. However, it is also well settled that such status does not confer statutory aggrievement. "[M]ere status . . . as a party or a participant in a hearing before an administrative agency does not in and of itself constitute aggrievement for the purposes of appellate review." (Internal quotation marks omitted.) *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 132, 627 A.2d 1257 (1993).

Nevertheless, the plaintiff argues that § 16-50q, by its terms, grants statutory aggrievement. The statute does express an opportunity for parties in proceedings before the Siting Council to appeal to the Superior Court. However, the opportunity is not automatic. The statute allows appeals "in accordance with the provisions of section 4-183. . . ." General Statutes § 16-50q. Section 4-183 includes the requirement that persons who wish to appeal must show aggrievement. General Statutes § 4-183 (a) ("[a] person who has exhausted all administrative remedies available within the agency and

who is aggrieved by a final decision may appeal to the Superior Court as provided in this section"). Whether § 16-50q confers statutory aggrievement, or merely refers to UAPA appellate rights, which require proof of classical aggrievement in the absence of statutory aggrievement, presents a question of statutory interpretation.

"The principles that govern statutory construction are well established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Grady* v. *Somers*, 294 Conn. 324, 332–33, 984 A.2d 684 (2009). The court finds the statute in this case to be ambiguous. Resort to the legislative history, therefore, is necessary.

The legislative history in this case clarifies that the legislature did not intend § 16-50q to confer automatic aggrievement. The history shows that, in 1977, the General Assembly made changes to the UAPA and numerous other statutes affecting appellate rights from

decisions of a variety of state agencies. With particular regard to the Siting Council, prior to 1977, § 16-50q read as follows: "Any party may obtain judicial review of an order issued on an application for a certificate or an amendment of a certificate. Such review shall be brought in the court of common pleas for the county wherein the proposed facility is to be located. If such facility is to be located in more than one county, such review may be brought in any one but only one of such counties. Such review shall be initiated by the filing of a petition in said court within thirty days after the publication of such order, together with proof of service of a demand on the council to file with said court a copy of the record of the proceedings before the council and a copy of its order and opinion. Upon receipt of such petition and demand, the council shall forthwith deliver to the court a copy of the record and a copy of its order and opinion. *Thereupon the court shall have jurisdiction of the proceeding* and shall have power to grant such relief as it deems just and proper, including restraining orders and temporary and permanent injunctions, and to make and enter an order enforcing, modifying, and enforcing as so modified, remanding for further specific evidence or findings or setting aside in whole or in part such order. The appeal shall be heard on the record. The findings of fact on which such order is based shall be conclusive if supported by substantial evidence on the record considered as a whole. Any judicial review sought pursuant to this chapter shall be privileged in respect to assignment for trial in the court of common pleas." (Emphasis added.) General Statutes (Rev. to 1975) § 16-50q.

In the 1977 changes, the legislature amended § 16-50q by deleting the lengthy description of appellate procedures, including the language emphasized above conferring jurisdiction on the courts in appeals filed by parties before the Siting Council. In its place, it added

the words "in accordance with the provisions of section 4-183." Public Acts 1977, No. 77-603, § 14. The statute now reads as first cited above. This history clearly shows that even if § 16-50q conferred automatic statutory aggrievement prior to 1977, all of that changed in 1977. After 1977, parties must comply with § 4-183 under which classical aggrievement must be shown.

The legislative debates are in accord. The bill being debated in 1977 was titled, "An Act to Make Appeals from Administrative Decisions Uniform." Substitute Senate Bill No. 1662, 1977 Sess. On introducing that bill in the House of Representatives, Representative Ernest N. Abate remarked as follows: "Yes, Mr. Speaker, this bill simply does what [its] title indicates. It makes uniform appeal[s] from the administrative decisions of various agencies. Right now, there are conflicting provisions in the statutes that allow for appeal through various channels and within various and conflicting periods of time. This bill simply indicates that appeals must be brought within 30 days and all appeals from administrative agencies must be brought in accordance with the provisions of this particular proposal. I move the passage of this bill." 20 H.R. Proc., Pt. 13, 1977 Sess., p. 5252, remarks of Representative Abate.

This further shows that the legislature intended to make appeals from the Siting Council subject to the standard requirements of the UAPA which require proof of classical aggrievement in the absence of a statute conferring automatic statutory aggrievement. For all of the foregoing reasons, this court concludes that § 16-50q does not confer automatic statutory aggrievement. Accord *Rosa* v. *Connecticut Siting Council*, Superior Court, judicial district of New Britain, Docket No. CV-05-4007974-S (March 1, 2007); *New Haven* v. *Connecticut Siting Council*, Superior Court, judicial district of New Britain, Docket No. CV-02-0513195-S (August 21, 2002) (33 Conn. L. Rptr. 187). Thus, Brouillard must

show classical aggrievement or the court lacks subject matter jurisdiction to hear his appeal.

## III

With regard to classical aggrievement, Brouillard argues, first and foremost, that this tower injures his rights because it will sit on property that is nearby land owned by him or his company. Indeed, the tower will be sited on property located across the street from Brouillard's property. The tower is sited on a 100 foot by 100 foot lot within a 9.9 acre parcel known as the Simmons Farm. The Simmons Farm is part of a larger parcel owned by the town of Farmington and used, in part, for open space. The Simmons family leases the land from the town. The tower site will be subleased to Cellco. The overall height of the tower will be 117 feet. Brouillard's property is a 59 acre parcel known as the Farmington Polo Grounds. Brouillard, in part, operates stables for the boarding of his and other people's horses on part of his property. If this were a zoning appeal, his point would be dispositive. Abutting and nearby landowners are statutorily aggrieved in zoning cases. Under General Statutes § 8-8 (a) (1), persons owning land within 100 feet of any portion of land involved in a zoning decision gives the landowner statutory standing in a zoning appeal. This is not a zoning appeal, however. His status as a nearby property owner does not confer standing. See *Walls* v. *Planning & Zoning Commission*, 176 Conn. 475, 478, 408 A.2d 252 (1979); *Jaeger* v. *Connecticut Siting Council*, Superior Court, judicial district of New Britain, Docket No. CV-09-4020354-S (March 15, 2010).

Nevertheless, he argues that this tower will cause esthetic injury, injury to the historic attributes of the locale, and injury to the open space and farming character of the property. He argues that it was expected that this area would remain open space or a farm, especially

after the town purchased the property in 2001 after a referendum authorized its purchase for open space and agricultural use. He claims that the town's decision to sublease the 100 foot by 100 foot parcel for the tower injures those interests. On these points, the court finds that Brouillard has failed to demonstrate aggrievement. It is clear that this tower is not on his property and does not affect any of his specific personal and legal interests as distinguished from a general interest, such as the concern of all members of the community as a whole. That he prefers to see that site remain open space or a farm is understandable. However, any expectation on his part is unjustified under the facts before the court and cannot defeat state statutes which, since 1973, have given the Siting Council authority to override local municipal control over proposed tower locations. See General Statutes § 16-50x (a); *Westport* v. *Connecticut Siting Council*, 260 Conn. 266, 796 A.2d 510 (2002), aff'g 47 Conn. Sup. 382, 394, 797 A.2d 655 (2001); *Preston* v. *Connecticut Siting Council*, 20 Conn. App. 474, 483, 568 A.2d 799, cert. denied, 214 Conn. 803, 573 A.2d 816 (1990). Moreover, he is still next to open space and a farm. The farm is simply sharing a small portion for a telecommunications tower—not an unusual or uncommon occurrence.

Brouillard asserts that he also has some interests that are unique. He argues that he has a specific and personal legal interest in the Simmons Farm because of a partnership agreement with the Simmons family. Indeed, the record shows that in 2007, he loaned $50,000 to the family and offered his services in helping market Simmons Milk in exchange for 30 percent of the net profits from the sale of milk. In addition, he obtained rights to buy hay for his horses and to deposit manure at the farm. He claims that these interests are adversely affected by reason of construction of a tower, to be surrounded by a fence, and due to the electromagnetic

radiation from the tower particularly on milk production. As to the radiation issue, he offers a 1998 German study on point. He also claims special rights in that clients who board horses at his stables can cross the Simmons Farm to ride their horses along the nearby Farmington Canal trails. He claims that horses could be injured by the gravel access road planned for the site.

On these points, the court finds that Brouillard has proven a specific, personal and legal interest at stake. However, he has not proven that those interests will be specially and injuriously affected. On this point, the aggrievement tests are very lenient. "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 25, 901 A.2d 649 (2006). Nevertheless, the fact that a plaintiff can articulate a claim is not sufficient. There must be evidence. See *New Haven* v. *Public Utilities Commission*, 165 Conn. 687, 700, 345 A.2d 563 (1974). "Although one may establish aggrievement by establishing the possibility of harm, mere speculation that harm may ensue is not an adequate basis for finding aggrievement." *Goldfisher* v. *Connecticut Siting Council*, 95 Conn. App. 193, 198, 895 A.2d 286 (2006). His claims on these points in this case are speculative. There is no evidence of harm from the fence or tower on any of Brouillard's activities or property interests. Assuming, arguendo, that he can raise the issue concerning electromagnetic radiation,[2] there is no evidence of harm from electromagnetic radiation in this case. Indeed, Brouillard admits that the

---

[2] Federal law preempts state regulation of the placement of towers based on the environmental effects of the radio frequency emissions in this case, provided the emissions comply with Federal Communication Commission regulations. 47 U.S.C. § 332 (c) (7) (B) (iv). The emissions in this case are well below the federal limits.

German study offered is not peer reviewed and is inconclusive. It is speculative. There is no evidence of harm to his business interest at the farm. There is no evidence of harm to horses using the farm. They could walk to the Farmington Canal without stepping on the gravel by walking next to the gravel or using a different route.

Ironically, he also claims injury in that Cellco could have sited the tower elsewhere, namely on his property. In other words, he claims injury by the fact that Cellco chose the Simmons Farm for their tower rather than his property, notwithstanding all of his above concerns for humans, animals and the land. Disappointment over economic disadvantage caused by competition does not ordinarily qualify as aggrievement. *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, supra, 226 Conn. 127; see *Old Rock Road Corp.* v. *Commission on Special Revenue*, 173 Conn. 384, 388, 377 A.2d 1119 (1977). He has no grounds for a claim of aggrievement on this point under the facts in this case.

Brouillard also raises many issues concerning procedural irregularities, constitutional infirmities, and errors allegedly committed by the Siting Council in its decision in this case. Such grounds for reversal can be presented on appeal if they prejudice the substantial rights of the person appealing. See General Statutes § 4-183 (j). Brouillard, however, has failed to prove classical aggrievement, which would permit him to appeal. The court lacks subject matter jurisdiction to hear his claims on these points.

IV

For all of the foregoing reasons, the defendants' motions to dismiss (Doc. #117.00 and Doc. #120.00) are granted and the case is dismissed accordingly.