******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT MAYER ET AL. *v.* HISTORIC
DISTRICT COMMISSION OF THE
TOWN OF GROTON ET AL.
(SC 19568)
(SC 19569)

Palmer, Eveleigh, McDonald, Espinosa, Robinson and Vertefeuille, Js.

*Argued January 18—officially released May 30, 2017*

*Thomas F. Collier*, with whom was *Frank N. Eppinger*, for the appellants (plaintiffs).

*Michael P. Carey*, for the appellee (named defendant).

*Harry B. Heller*, for the appellees (defendant Steven Young et al.).

*Opinion*

ROBINSON, J. The principal issue in this appeal is whether the statutory aggrievement principles of General Statutes § 8-8[1] extend to appeals from the decisions of historic district commissions brought pursuant to General Statutes § 7-147i.[2] The plaintiffs, Robert Mayer and Mary Pat Mayer, appeal[3] from the judgments of the trial court dismissing their appeals from two decisions of the named defendant, the Historic District Commission of the Town of Groton (commission), with respect to alterations to a barn located on real property owned by the defendants Steven Young and Caroline Young (applicants).[4] On appeal, the plaintiffs claim that the trial court improperly concluded that: (1) statutory aggrievement under § 8-8 does not extend to historic district commission appeals brought pursuant to § 7-147i; and (2) they had failed to establish that they were classically aggrieved with respect to each of the commission's two decisions. We disagree and, accordingly, affirm the judgments of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiffs own real property located at 50 Pearl Street in the Mystic River Historic District within the town of Groton (town). The applicants own abutting real property located at 52 Pearl Street. On May 1, 2012, the applicants sought a certificate of appropriateness from the commission that would allow them to remove nine feet, seven inches from the southern end of a historic barn located on their property, which would eliminate their need to obtain a variance from the town's lot coverage regulations in connection with plans to build an addition to their house. At a public hearing on May 15, 2012, the commission voted to grant that application for a certificate of appropriateness, despite the fact that the plaintiffs appeared and objected to the application. On May 25, 2012, the plaintiffs appealed from the commission's decision granting the certificate of appropriateness to the trial court pursuant to § 7-147i (first appeal).

While the first appeal was pending before the trial court, on September 1, 2012, the applicants requested a second certificate of appropriateness from the commission to: (1) modify the barn by removing a portion not in public view, in accordance with an accompanying architectural drawing; and (2) "modify and expand [the] existing rear addition" to the house. Specifically, the applicants sought the commission's approval of a proposal to reduce the overall footprint of the barn while leaving several of its facades intact, in order to make additional room for the contemplated addition. The commission held a public hearing on the second application on September 18, 2012. The commission then continued the hearing to a second session, held on October 16, 2012. At that hearing, the applicants withdrew the portion of the application seeking a certificate

of appropriateness with respect to alterations to the main house. After some discussion, the commission found that it lacked jurisdiction over the remainder of the matter because "the portion of the [barn at issue did] not meet the definition of an exterior architectural feature that is open to view from a public street, way or place." On October 29, 2012, the plaintiffs appealed from the commission's finding of no jurisdiction to the trial court pursuant to § 7-147i (second appeal).

The trial court held a hearing on both appeals on July 22, 2014. Following testimony by the plaintiffs to establish their aggrievement in each appeal, the defendants moved to dismiss both appeals for lack of statutory or classical aggrievement. The trial court subsequently issued separate memoranda of decision granting the motions of the defendants to dismiss the two appeals.

In its memoranda of decision, the trial court first agreed with the defendants' claim that statutory aggrievement under § 8-8 (a) does not apply to historic district commission appeals brought pursuant to § 7-147i. Rejecting the contrary analysis in *Peeling* v. *Historic District Commission*, Superior Court, judicial district of Stamford-Norwalk, Docket No CV-06-4009772-S (November 1, 2006) (42 Conn. L. Rptr. 284), the trial court held that § 7-147i "is not ambiguous; it simply does not provide any alternative to proving actual aggrievement. The legislature could have but did not provide expressly, or incorporate the per se aggrievement provision in § 8-8 (a) (1) . . . ."

The trial court then turned to classical aggrievement. With respect to the first appeal, the trial court acknowledged that the plaintiffs had pleaded that they were aggrieved. The trial court nevertheless concluded that the plaintiffs had "rested their case on aggrievement without presenting any evidence of such aggrievement or citing any evidence in the record, let alone any specific testimony or exhibit in the record, from which the court could find aggrievement as a matter of fact." The court further rejected the plaintiffs' reliance on the administrative record pursuant to *State Library* v. *Freedom of Information Commission*, 240 Conn. 824, 832–33, 694 A.2d 1235 (1997), noting the plaintiffs' failure to cite specific references to the administrative record during their case-in-chief, and stating that even if it were to search the record, the plaintiffs had failed to establish "the possibility . . . that [they] have a specific personal and legal interest in the subject of the [commission's] decision which [had] been specially and injuriously affected . . . ."[5] Accordingly, the court rendered judgment dismissing the first appeal.

With respect to the second appeal, the trial court concluded that the plaintiffs failed to plead that they were classically aggrieved by the commission's decision. The court also emphasized that the commission's

decision to permit the applicants to remove a portion of the barn did not directly harm the plaintiffs, observing that they could not see that portion of the barn from their property, and there was no "claim, let alone credible evidence," that the removal of that portion of the barn "harmed the value [of the plaintiffs' property]." The trial court reiterated that the possibility that the applicants might use the space to build an addition did not render the plaintiffs aggrieved. See footnote 5 of this opinion. Accordingly, the trial court rendered judgment dismissing the second appeal. These appeals followed. See footnote 3 of this opinion.

On appeal, the plaintiffs claim that the trial court improperly concluded, with respect to both appeals, that: (1) the statutory aggrievement provided by § 8-8 (a) does not apply to historic district commission appeals brought pursuant to § 7-147i; and (2) they were not classically aggrieved. We address each of these claims in turn. Additional relevant facts will be set forth as necessary.

"Before we address the merits of the parties' claims, we briefly set forth the law governing aggrievement . . . . [P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal. . . . [I]n order to have standing to bring an administrative appeal, a person must be aggrieved. . . .

"Standing . . . is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest. . . . Aggrievement does not demand certainty, only the possibility of an adverse effect on a legally protected interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Citations omitted; internal quotation marks omitted.) *Moutinho* v. *Planning & Zoning Commission*, 278 Conn.

660, 664–65, 899 A.2d 26 (2006).

## I

We begin with the plaintiffs' claim that the trial court improperly concluded that the statutory aggrievement principles of § 8-8 (a) do not apply to appeals from historic district commission decisions brought pursuant to § 7-147i. The plaintiffs contend that the language of § 7-147i, which provides that "[p]rocedure upon such appeal shall be the same as that defined in section 8-8," is plain and unambiguous and, as such, affording them the statutory aggrievement provided by § 8-8 (a) is consistent with the purpose of that statute, because they are "distinct from other property owners due to [their] obvious interest as 'the property next door.' " The plaintiffs argue that the legislature has, for more than ten years, acquiesced in the Superior Court's construction of §§ 7-147i and 8-8 (a) in *Peeling* v. *Historic District Commission*, supra, 42 Conn. L. Rptr. 284, which held that statutory aggrievement applies in historic district commission appeals. The plaintiffs further argue that the " '[e]xcept as provided' " by § 7-147i language in § 8-8 "applies only to the various time periods for appeals in the listed legal proceedings" set forth in § 8-8 (b), and "does not exclude statutory aggrievement in § 7-147i."

In response, the commission contends that the trial court properly determined that statutory aggrievement does not apply in appeals from historic district commissions pursuant to § 7-147i. The commission argues that, even if § 7-147i is deemed to incorporate all of § 8-8 (a), the plain language of § 8-8 (a) confers statutory aggrievement only on persons aggrieved by decisions of planning commissions, zoning commissions, zoning boards of appeal, or combined planning and zoning commissions. Citing a Connecticut land use treatise; see T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992), pp. 547–48; the commission contends that this limited provision of statutory aggrievement in § 8-8 (a) plainly and unambiguously provides that parties appealing from decisions of other types of land use agencies must prove classical aggrievement. Accordingly, the commission argues that the Superior Court's decision in *Peeling* is both dictum and wrongly decided. We agree with the commission and conclude that § 8-8 (a) does not afford statutory aggrievement in historic district commission appeals brought pursuant to § 7-147i.

Whether §§ 7-147i and 8-8 (a) combine to provide statutory aggrievement in historic district commission appeals presents a question of statutory construction over which we exercise plenary review. *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 302, 140 A.3d 950 (2016). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek

to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id., 302–303.

We begin with the text of the statutes. Section 7-147i provides in relevant part that: "*Any person or persons severally or jointly aggrieved* by any decision of the historic district commission or of any officer thereof may, within fifteen days from the date when such decision was rendered, take an appeal to the superior court for the judicial district in which such municipality is located . . . . *Procedure upon such appeal shall be the same as that defined in section 8-8.*" (Emphasis added.)

Section 8-8 (a) (1), in turn, defines " '[a]ggrieved person' " as "a person aggrieved by a decision of a board,"[6] stating further that "[i]n the case of a decision by *a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals,* 'aggrieved person' includes any person owning land in this state that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." (Emphasis added.)

Moving beyond the definitions, § 8-8 (b) then provides in relevant part: "Except as provided in subsections (c), (d) and (r) of this section *and sections 7-147 and 7-147i*, any person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3 or a special permit or special exception pursuant to section 8-3c, may take an appeal to the superior court for the judicial district in which the municipality is located . . . ." (Emphasis added.)

Read together, we conclude that §§ 7-147i and 8-8 do not provide for statutory aggrievement in historic district commission appeals. Even if we assume that the reference to "procedure" in § 7-147i incorporates by reference the aggrievement provisions of § 8-8 (a),

the plain and unambiguous language of § 8-8 (a) (1) only confers statutory aggrievement with respect to decisions of a limited array of land use agencies, namely, "a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals . . . ." Reading this enumeration of land use agencies to include historic district commissions would contravene the "doctrine of expressio unius est exclusio alterius—the expression of one thing is the exclusion of another—[under which] we presume that when the legislature expresses items as part of a group or series, an item that was not included was deliberately excluded." *DeNunzio* v. *DeNunzio*, 320 Conn. 178, 194, 128 A.3d 901 (2016). Put differently, it is well settled that "[w]e are not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *State Board of Labor Relations*, 296 Conn. 594, 605, 996 A.2d 729 (2010).

Moreover, it is well settled that the legislature, in enacting the statutory aggrievement provision of § 8-8 (a) (1), "is presumed to have acted with knowledge of existing statutes and with an intent to create one consistent body of law. . . . The General Assembly is always presumed to know all the existing statutes and the effect that its action or [lack thereof] will have [on] any one of them. And it is always presumed to have intended that effect which its action or [lack thereof] produces." (Internal quotation marks omitted.) *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 398, 978 A.2d 49 (2009). This presumption is particularly apt in this case, given that § 7-147i, first enacted in 1961; see Public Acts 1961, No. 430, § 11; predated the statutory aggrievement provisions in § 8-8, which were first enacted in 1967, broadened in 1977, and reorganized in 1989. See Public Acts 1989, No. 89-356, § 1; Public Acts 1977, No. 77-470; Public Acts 1967, No. 712. The legislature's awareness of the historic district commission legislation is more than presumptive in this context, given that § 8-8 (b) expressly refers to § 7-147i in carving out certain exceptions to the land use appeals procedure, in particular the appeal period and service of process.

Indeed, looking beyond § 8-8 (a) (1), related statutes affecting land use appeals demonstrate that, if the legislature wanted to create statutory aggrievement in historic district cases, "it could have done so expressly." *Dept. of Public Safety* v. *State Board of Labor Relations*, supra, 296 Conn. 605. In particular, we note General Statutes § 22a-43 (a), which allows for administrative appeals from decisions of municipal inland wetlands and watercourses commissions by "[t]he commissioner or any person aggrieved" or "any person owning or occupying land which abuts any portion of land within, or is within a radius of ninety feet of, the wetland or watercourse involved in any regulation, order, decision

or action . . . ." Thus, we agree with the commission that the legislature's failure to provide expressly for statutory standing with respect to historic district commission appeals is significant, especially in light of the fact that the legislature has done so with respect to appeals from other municipal land use agencies. See T. Tondro, supra, p. 548 (opining that statutory aggrievement not available in historic district cases because "the legislature has provided a statutory presumption of aggrievement under some regulatory programs but not others"); accord *Edgewood Village, Inc.* v. *Housing Authority*, 265 Conn. 280, 293, 828 A.2d 52 (2003) ("[a]though the plaintiffs reside next to or near the property at issue, the housing scheme does not reflect concerns that mere proximity to public housing would bestow a specific and legal interest due to the defective notice"), cert. denied, 540 U.S. 1180, 124 S. Ct. 1416, 158 L. Ed. 2d 82 (2004).

We further disagree with the plaintiffs' reliance on the doctrine of legislative acquiescence, under which "we may infer that the failure of the legislature to take corrective action within a reasonable period of time following a definitive judicial interpretation of a statute signals legislative agreement with that interpretation." *State* v. *Courchesne*, 296 Conn. 622, 717, 998 A.2d 1 (2010). Specifically, the plaintiffs rely on the legislature's failure to amend §§ 7-147i or 8-8 (a) (1) in response to *Peeling* v. *Historic District Commission*, supra, 42 Conn. L. Rptr. 284, in which the Superior Court concluded that the reference in § 7-147i to the " 'procedure' " in § 8-8 "clearly states the legislature's intent to incorporate the statutory aggrievement standards of . . . § 8-8 and makes them applicable to appeals from the actions of historic district commissions."[7] Although we have applied the doctrine of legislative acquiescence to Superior Court decisions, we have done so only with respect to the limited array of significant trial court decisions that the Reporter of Judicial Decisions has officially published in the Connecticut Supplement. See General Statutes (Rev. to 2015) § 51-215a (a); see also *State* v. *Fernando A.*, 294 Conn. 1, 20 n.15, 981 A.2d 427 (2009) (en banc) ("the fact that [*State* v. *Doe*, 46 Conn. Supp. 598, 765 A.2d 518 (2000)], is a Superior Court decision not binding statewide does not detract from its status at that time as the only published authority construing [General Statutes] § 46b-38c"); accord *State* v. *Courchesne*, supra, 717–18 (unnecessary to apply presumption of legislative acquiescence because legislative history demonstrated General Assembly's approval of two published Superior Court decisions adopting common-law "born alive rule"). Because *Peeling* lacks the precedential imprimatur and enhanced public notice that attends official publication in the Connecticut Supplement, we decline to presume the legislature aware of it for purposes of legislative acquiescence.[8]

Finally, we acknowledge the plaintiffs' reliance on the policy underlying statutory aggrievement, as expressed in the legislative history of § 8-8 (a) (1), namely, to eliminate the often formulaic litigation of the aggrievement issue by immediate neighbors to project proposals.[9] Extension of statutory aggrievement might well be consistent with expectations of those who purchase real property in historic districts. See General Statutes § 7-147a (b); *Gibbons* v. *Historic District Commission*, 285 Conn. 755, 761–62, 941 A.2d 917 (2008). The plain and unambiguous language of §§ 7-147i and 8-8 (a) does not, however, allow for implementation of this policy by way of statutory interpretation. Particularly "[i]n areas where the legislature has spoken . . . the primary responsibility for formulating public policy must remain with the legislature," and "[i]t is not the function of courts to read into clearly expressed legislation provisions which do not find expression in its words . . . ."[10] (Internal quotation marks omitted.) *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987). Accordingly, we conclude that the trial court properly determined that the plaintiffs were not statutorily aggrieved under §§ 7-147i and 8-8 (a) (1).

## II

We next turn to the plaintiffs' claim that the trial court improperly determined that they had not established classical aggrievement in either appeal. Before addressing the plaintiffs' specific claims, we note the following generally applicable legal principles and the relevant standard of review. As indicated previously, the "fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. . . .

"Mindful that it is a fundamental concept of judicial administration that no person is entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity . . . [a plaintiff is] required to plead and prove some injury in accordance with our rule on aggrievement. . . . Accordingly, [i]t [is] the function of the trial court to determine . . . first, whether the [plaintiff's] allegations if they should be proved would constitute aggrievement as a matter of law, and second,

if as a matter of law they would constitute aggrievement, then whether [the plaintiff] proved the truth of [the] allegations. . . . Although the question of whether a party is aggrieved presents a question of fact in cases involving disputed facts . . . the question of whether the pleadings set forth sufficient facts, if presumed true, to establish a party's aggrievement presents a question of law over which we exercise plenary review." (Citation omitted; internal quotation marks omitted.) *Handsome, Inc.* v. *Planning & Zoning Commission*, 317 Conn. 515, 526–27, 119 A.3d 541 (2015).

A

We begin with the plaintiffs' challenge to the trial court's conclusion in the first appeal, namely, that they did not prove that they were classically aggrieved by the commission's May 15, 2012 decision to allow the applicants to remove nine feet, seven inches from the southern end of the barn. Relying on *State Library* v. *Freedom of Information Commission*, supra, 240 Conn. 832–33, the plaintiffs first contend that the trial court improperly declined to consider the facts in the administrative record, in particular Robert Mayer's testimony before the commission about the significant reduction of the plaintiffs' property value that would be caused by the applicants' proposed house addition, which would block the water views from the plaintiffs' property. The plaintiffs also claim that they were aggrieved by "gross procedural defects" during the proceedings before the commission, such as defective notice of hearings and the commission's failure to follow its own procedures.

In response, the commission argues, inter alia, that there was no evidence of classical aggrievement because the record established only the mere proximity of the plaintiffs' home to the applicants' property, which is insufficient as a matter of law. Relying on *Water Pollution Control Authority* v. *Keeney*, 234 Conn. 488, 662 A.2d 124 (1995), the commission then contends that, even if the court searches the administrative record pursuant to *State Library* v. *Freedom of Information Commission*, supra, 240 Conn. 832, the evidence of aggrievement is entirely speculative because there is no claim that a reduction of the barn's size would obstruct the plaintiffs' water views and that this concern relates to only the effect of the contemplated addition, which was not a matter before the commission at that time. The commission also argues that the plaintiffs' claims of damage to their property value are founded only on the hearsay statements of unnamed professionals, cited in Robert Mayer's statements before the commission. See footnote 15 of this opinion. Finally, the commission contends that the plaintiffs' allegations of procedural defects, including defective notice of the public hearing, do not establish classical aggrievement. We agree with the commission, and conclude that the

trial court properly determined that the plaintiffs did not prove that they were classically aggrieved in the first appeal.

Even if we look to the evidence in the administrative record before the commission, as urged by the plaintiffs,[11] we conclude that the trial court properly determined that the plaintiffs were not aggrieved parties in the first appeal. Assuming, without deciding, that the first prong of the aggrievement test—namely, a specific, personal and legal interest in the commission's decision—is satisfied because of the adverse impact of the applicants' proposed addition on the plaintiffs' property values[12] by virtue of its effect on their water views,[13] the plaintiffs cannot satisfy the second prong of the test—namely, that such an interest has been specially and injuriously affected by the challenged action. "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Handsome, Inc.* v. *Planning & Zoning Commission*, supra, 317 Conn. 526.

Although the adverse effect on the plaintiffs' legally protected interest need not be certain to establish aggrievement, it nevertheless is well settled that, even when property values are at issue, "speculative concern . . . even if true [does] not rise to the level of aggrievement. Allegations and proof of mere generalizations and fears are not enough to establish aggrievement." (Internal quotation marks omitted.) *Water Pollution Control Authority* v. *Keeney*, supra, 234 Conn. 496; see also, e.g., *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 497, 400 A.2d 726 (1978) (trial court properly found no aggrievement when no credible evidence of "likely depreciation" of plaintiffs' property and "no credible evidence of any other adverse effect in their property, if any, resulting from the proposed activity"); *Joyce* v. *Zoning Board of Appeals*, 150 Conn. 696, 698, 187 A.2d 239 (1962) (after finding supporting testimony by realtor unpersuasive, trial court properly rejected plaintiff's concern that grant of permit to open doctor's office would "depreciate the value of his property, which was about 350 feet from the doctor's premises"); *Goldfisher* v. *Connecticut Siting Council*, 95 Conn. App. 193, 198–200, 895 A.2d 286 (2006) (upholding finding of no aggrievement because trial court properly credited testimony of defendant's appraiser that alteration of "special and somewhat unique" view from plaintiff's property by construction of cell tower would not have lowered his property value, rather than testimony to contrary by plaintiff's appraiser); *Olsen* v. *Inland Wetlands Commission*, 6 Conn. App. 715, 719, 507 A.2d 495 (1986) (trial court reasonably found that property assessor's testimony that "commission's approval of the application would depreciate the value of [the plaintiff's] property" was "purely speculative and insufficient to establish

aggrievement").

The Appellate Court's decision in *Wallingford* v. *Zoning Board of Appeals*, 146 Conn. App. 567, 79 A.3d 115, cert. denied, 310 Conn. 964, 83 A.3d 346 (2013), is a particularly apt example of when the effects of a land use agency's decision are too speculative to render an objecting party aggrieved for purposes of an appeal. In *Wallingford*, the Appellate Court held that a town was not aggrieved by a neighboring town zoning board's grant of a use variance, grounded in a "conceptual site plan" that would have increased traffic congestion on the town's streets, because the town's "concerns as to traffic are, at present, premature" insofar as the site plan had not yet been approved. Id., 576–77. The Appellate Court emphasized that "the plaintiff's failure to show how it is injured by the use variance itself is what precludes a finding of aggrievement in this case. Instead, the plaintiff claims aggrievement based on a mere proposal, which at this moment in time has not been approved, and is of no force or effect. Any injury premised on an unapproved site plan at this juncture remains speculative." Id., 577.

In the present case, all that the commission's May 15 decision did was approve the applicants' planned reduction of the size of the barn, an action that by itself raised no possibility of harming the plaintiffs' economic interests stemming from their water view. The commission's May 15 decision did not approve—or even consider—the addition itself.[14] Moreover, Robert Mayer's testimony before the commission, upon which the plaintiffs rely heavily, focused solely on the impact of the contemplated addition on the plaintiffs' property values, and was not directed to the proposed barn alterations by themselves.[15] This renders the effect of the commission's actual decision purely speculative with respect to the plaintiffs' property values and, therefore, insufficient to establish classical aggrievement as to the first appeal.

Finally, the alleged procedural irregularities and public notice defects on the part of the commission similarly do not render the plaintiffs aggrieved parties. It is well settled that such procedural deficiencies, even if they cause the loss of an opportunity to be heard, do not by themselves establish classical aggrievement.[16] See, e.g., *Andross* v. *West Hartford*, 285 Conn. 309, 341, 939 A.2d 1146 (2008); see also *Edgewood Village, Inc.* v. *Housing Authority*, supra, 265 Conn. 293 ("consistent with the statutory requirement to provide general notice to the community, the defective notice not only affected the plaintiffs, but also every other resident of [the city], who, for whatever reason, wished to be heard"); *Brouillard* v. *Connecticut Siting Council*, 52 Conn. Supp. 196, 206, 39 A.3d 1241 (2010) (plaintiff cannot challenge "procedural irregularities, constitutional infirmities, and errors" without first establishing "classical

aggrievement, which would permit him to appeal"), aff'd, 133 Conn. App. 851, 38 A.3d 174, cert. denied, 304 Conn. 923, 41 A.3d 662 (2012). Accordingly, we conclude that the trial court properly dismissed the first appeal for lack of classical aggrievement.

B

The plaintiffs next claim that the trial court improperly concluded that they had failed to plead facts sufficient to demonstrate aggrievement with respect to the second appeal, in which they challenged the commission's October 16, 2012 determination that it lacked jurisdiction over the proposed facade alteration to the barn. In arguing that they adequately pleaded aggrievement, the plaintiffs rely on the following factual allegations: (1) their property abuts the applicants' property; and (2) the commission's defective process and lax enforcement practices in considering the application ultimately harmed their property values. In response, the commission, relying heavily on *Connecticut Independent Utility Workers*, *Local 12924* v. *Dept. of Public Utility Control*, 312 Conn. 265, 92 A.3d 247 (2014), and *Wucik* v. *Planning & Zoning Commission*, 113 Conn. App. 502, 967 A.2d 572 (2009), argues that the trial court properly determined that the plaintiffs failed to plead aggrievement in their administrative appeal. The commission emphasizes that the second appeal contains only allegations of substantive and procedural errors by the commission in considering the second application, and that even those allegations claiming improper public notice may be raised only by an " 'aggrieved person' " under the extended statute of limitations provided by § 8-8 (r).[17] We agree with the commission, and conclude that the trial court properly determined that the plaintiffs failed to plead their aggrievement adequately in the second appeal.

"In order to prevail on the issue of aggrievement, [t]he trial court must be satisfied, first, that the plaintiff alleges facts which, if proven, would constitute aggrievement as a matter of law, and, second, that the plaintiff proves the truth of those factual allegations. . . . The mere statement that the appellant is aggrieved, without supporting allegations as to the particular nature of the aggrievement, is insufficient." (Internal quotation marks omitted.) *Bongiorno Supermarket*, *Inc.* v. *Zoning Board of Appeals*, 266 Conn. 531, 542–43, 833 A.2d 883 (2003); see also *Wucik* v. *Planning & Zoning Commission*, supra, 113 Conn. App. 508–509 (trial court properly dismissed zoning appeal because failure to plead "*any* allegations as to the particular nature of the aggrievement" rendered evidentiary hearing on that point unnecessary [emphasis in original]). "Although the question of whether a party is aggrieved presents a question of fact in cases involving disputed facts . . . the question of whether the pleadings set forth sufficient facts, if presumed true, to establish a

party's aggrievement presents a question of law over which we exercise plenary review." (Internal quotation marks omitted.) *Handsome, Inc.* v. *Planning & Zoning Commission*, supra, 317 Conn. 527.

"It is important to understand that the pleading requirement is not merely a matter of form. Rather, it provides an opportunity for the opposing party to answer in denial, thereby placing the jurisdictional fact[s] into dispute for the court's resolution. Memoranda of law are not pleadings. Although this court has made a few passing references to parties' briefs or memoranda in connection with the issue of aggrievement, these references simply acknowledge that such sources may provide a context from which a reviewing court can determine which reasonable inferences may be drawn from facts alleged in the pleadings." *Connecticut Independent Utility Workers, Local 12924* v. *Dept. of Public Utility Control*, supra, 312 Conn. 281.

We conclude that the trial court properly determined that the plaintiffs did not adequately plead aggrievement in the second appeal. We note first that the plaintiffs pleaded that they are the "owners of a tract of land, with a building and outbuilding thereon . . . which abuts the property of [the applicants]." In the absence of a basis for statutory aggrievement, "[t]he allegation, even if proved, merely that the plaintiffs' property lies in close proximity to the area involved in the commission's action would not be enough" to establish their classical aggrievement. *Hughes* v. *Planning & Zoning Commission*, 156 Conn. 505, 508, 242 A.2d 705 (1968); see, e.g., *Edgewood Village, Inc.* v. *Housing Authority*, supra, 265 Conn. 293.

The other facts alleged by the plaintiffs do not establish aggrievement in relation to the second appeal. First, the plaintiffs alleged that, during the September 18, 2012 hearing before the commission, the applicants presented material with respect to the modification to the barn, and two proposals for the rear addition; the commission then advised the applicants that it "could not approve multiple requests for the same application." The plaintiffs then alleged that the commission heard objections and received evidence with respect to the new application, including that: (1) the applicants violated the commission's procedural rules by submitting a third application within the same year with respect to the same building "already acted on by the [c]ommission without a significant change in circumstances"; (2) the applicants had failed to provide adequate supporting materials for the application; and (3) "any argument that [the commission] did not have jurisdiction regarding the [ninety year old] historic barn was invalid since at least one side of the building was admitted to be in the view of the public." The plaintiffs also alleged that the commission improperly handled the second part of the

application, concerning the addition itself, which the applicants then withdrew on the advice of the commission. The plaintiffs then claimed that, after the hearing was continued to October 16, 2012, the commission improperly disregarded evidence supporting its jurisdiction over the barn and the violation of its own procedures.[18] The plaintiffs also claimed that these procedural errors constituted a due process violation. Ultimately, the plaintiffs claimed that the commission acted illegally and abused its discretion when it improperly determined that the applicants' proposed " '[p]otemkin-style' " facade "met the spirit of [its] design criteria and that [it] had 'no jurisdiction' regarding the proposed alteration."

Having reviewed the facts pleaded in relation to the second appeal, there is no allegation that the alteration of the barn to create a new facade harmed any legal interest of the plaintiffs. Although the plaintiffs allege that the alteration of the barn would facilitate the construction of an addition that is beyond the historic character of the district, they do not in any way claim that this alteration would harm the plaintiffs' interest in their property. Moreover, to the extent that the plaintiffs rely on the procedural irregularities and public notice issues caused by the deficient allegations, there is no factual allegation demonstrating how those procedural deficiencies adversely affected the plaintiffs. In the absence of a basis for statutory aggrievement, such public notice deficiencies, as noted previously, even if they cause the loss of an opportunity to be heard, do not by themselves confer a basis for classical aggrievement. See, e.g., *Andross* v. *West Hartford*, supra, 285 Conn. 341; *Edgewood Village, Inc.* v. *Housing Authority*, supra, 265 Conn. 292–93; *Brouillard* v. *Connecticut Siting Council*, supra, 52 Conn. Supp. 206. Given the plaintiffs' failure to plead their aggrievement, we conclude that the trial court properly dismissed the second appeal.[19]

The judgments are affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 8-8 provides in relevant part: "(a) As used in this section:

"(1) 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land in this state that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board.

"(2) 'Board' means a municipal zoning commission, planning commission, combined planning and zoning commission, zoning board of appeals or other board or commission the decision of which may be appealed pursuant to this section, or the chief elected official of a municipality, or such official's designee, in a hearing held pursuant to section 22a-250, whose decision may be appealed.

"(b) Except as provided in subsections (c), (d) and (r) of this section and sections 7-147 and 7-147i, any person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3 or a special permit or special exception pursuant to section

8-3c, may take an appeal to the superior court for the judicial district in which the municipality is located, notwithstanding any right to appeal to a municipal zoning board of appeals under section 8-6. The appeal shall be commenced by service of process in accordance with subsections (f) and (g) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court. . . ."

Although § 8-8 has been amended by our legislature since the events underlying the present appeal; see, e.g., Public Acts 2015, No. 15-85, § 2; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] General Statutes 7-147i provides: "Any person or persons severally or jointly aggrieved by any decision of the historic district commission or of any officer thereof may, within fifteen days from the date when such decision was rendered, take an appeal to the superior court for the judicial district in which such municipality is located, which appeal shall be made returnable to such court in the same manner as that prescribed for other civil actions brought to such court. Notice of such appeal shall be given by leaving a true and attested copy thereof in the hands of or at the usual place of abode of the chairman or clerk of the commission within twelve days before the return day to which such appeal has been taken. Procedure upon such appeal shall be the same as that defined in section 8-8."

[3] Following the Appellate Court's grants of certification to appeal pursuant to § 8-8 (o), the plaintiffs filed separate appeals from the judgments of the trial court to the Appellate Court, and we transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[4] We note that the applicants did not file a brief in these appeals. Counsel for the applicants appeared at oral argument before this court and represented that they adopt the briefs and oral arguments of the commission. References to the defendants hereinafter include Steven Young, Caroline Young, and the commission.

[5] In the trial court's view, the case boiled down to the fact that "Robert Mayer likes the barn on [the applicants'] lot and objected to the [commission] allowing the [applicants] to remove less than ten feet of the barn's length, retaining the barn's south-facing . . . facade." The trial court held that the plaintiffs' reliance on the commission's apparent failure to enforce its own regulations did "not constitute more than a general interest . . . shared by the entire community . . . ." The trial court emphasized that the "possibility—even the probability—that the [applicants] will use the lot coverage reduction" to enlarge their home and adversely affect the plaintiffs' waterfront view "is not a proper consideration for this court, any more than it would have been for the [commission], in the absence of proof that the [plaintiffs] have an easement or other legal right to restrict what the [applicants] can do with their property within applicable land use laws and regulations."

[6] We note that § 8-8 (a) (2) defines " '[b]oard' " as "a municipal zoning commission, planning commission, combined planning and zoning commission, zoning board of appeals or other board or commission the decision of which may be appealed pursuant to this section, or the chief elected official of a municipality, or such official's designee, in a hearing held pursuant to section 22a-250, whose decision may be appealed."

[7] Given our analysis of the plain language of §§ 7-147i and 8-8 (a), we agree with the commission's argument that *Peeling* v. *Historic District Commission*, supra, 42 Conn. L. Rptr. 284, upon which the plaintiffs rely heavily, is wrongly decided to the extent that it stands for the proposition that "the last sentence of . . . § 7-147i . . . clearly states the legislature's intent to incorporate the statutory aggrievement standards of . . . § 8-8 and makes them applicable to appeals from the actions of historic district commissions." We also agree with the commission that this portion of the decision in *Peeling* is dictum, in light of the fact that the objecting neighbors in that case conceded that their real property was not located adjacent to or within 100 feet of the property that had received a certificate of appropriateness. Rather, the dispositive issue in *Peeling* was whether the objecting neighbors were statutorily aggrieved simply by virtue of their ownership of real property within the historic district—an argument rejected by the Superior Court in that case. See id. (statutory scheme governing historic districts "does not imply the creation any extraordinary rights" for property owners within such districts).

[8] In 2015, the legislature repealed subsection (a) of General Statutes (Rev.

to 2015) § 51-215a, which had provided for the official publication of Superior Court decisions in the Connecticut Supplement following review for precedential and public interest value. See Public Acts 2015, No. 15-85, § 10; see also Connecticut Judicial Branch, Testimony of the Honorable Patrick L. Carroll III (April 1, 2015) (assuring legislature that repeal "will not impact publication because the Judicial Branch provides copies of the decisions to outlets for publication" and "are also published electronically by private services."), available at https://www.cga.ct.gov/2015/JUDdata/Tmy/2015SB 01033-R000401-Honorable%20Patrick%20L.%20Carroll%20-%20Judicial%20 Branch,%20State%20of%20Connecticut-TMY.PDF (last visited May 13, 2017). We need not consider the extent to which the doctrine of legislative acquiescence remains applicable to Superior Court decisions issued subsequent to the repeal of General Statutes (Rev. to 2015) § 51-215a (a), which are widely available on commercial databases, but no longer are formally vetted by the Reporter of Judicial Decisions.

[9] The plaintiffs rely on certain portions of the legislative history of § 8-8 (a). See 32 H.R. Proc., Pt. 25, 1989 Sess., pp. 8820–23, remarks of Representative Robert F. Frankel (opposing amendment that would have restricted automatic aggrievement with respect to site plan or subdivision approval because of 1977 enactment of 100 foot rule to address "somewhat absurd" aggrievement disputes involving "house next door"); id., p. 8825, remarks of Representative Alex A. Knopp ("isn't it reasonable to assume if you live next door to the subdivision that your property interests are being affected somehow").

[10] Given the policy considerations identified by the plaintiffs, it remains the "prerogative" of the legislature "to modify or clarify" §§ 7-147i and 8-8 (a) "as it sees fit." *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 550, 93 A.3d 1142 (2014).

[11] We disagree with the plaintiffs' broader claim that the trial court improperly refused to consider facts in the administrative record, in contravention of *State Library* v. *Freedom of Information Commission*, supra, 240 Conn. 832, in which this court held that "a plaintiff may prove aggrievement by relying on facts established in the record as a whole, including the administrative record." This claim is an apparent misunderstanding of the trial court's decision. Rather than refuse to consider the administrative record as a matter of law, the trial court instead properly criticized the plaintiffs' failure to present their reliance upon it "during their case-in-chief on aggrievement so that the defendants could cross-examine [the plaintiffs] about the facts. Second, to point to the record in a general way and ask the court to find aggrievement is improper because that would lighten the burden of proof of aggrievement, if not shift the burden to the defendants to show why the record fails to show aggrievement, and place the court in the position of the plaintiffs' agent, if not advocate, in sifting through the record for evidence of aggrievement." See also *Connecticut Independent Utility Workers, Local 12924* v. *Dept. of Public Utility Control*, 312 Conn. 265, 281, 92 A.3d 247 (2014) (concluding that resort to administrative record for proof does not obviate need to plead facts supporting aggrievement because doing so "provides an opportunity for the opposing party to answer in denial, thereby placing the jurisdictional fact[s] into dispute for the court's resolution," and emphasizing that "we have never suggested that the record can be mined for evidence to cure deficient pleadings"). Moreover, notwithstanding its criticisms of these apparent pleading lapses, the trial court reviewed the record, and discussed at length why the evidence of harm therein was too speculative to establish aggrievement.

Thus, we need not consider the commission's contention that *State Library* is restricted to Uniform Administrative Procedure Act appeals; see General Statutes § 4-183; and does not apply to land use appeals. But see 9A R. Fuller, Connecticut Land Use Law and Practice (4th Ed. 2015), § 32.3, pp. 140–41 (citing Superior Court decisions extending *State Library* to allow plaintiffs to rely on administrative record to establish aggrievement in land use appeals under § 8-8 [b]).

[12] We acknowledge that it is well settled that, as property owner, Robert Mayer was "qualified to testify as to [his] personal opinion regarding the value, or diminution in value, of [his] properties. . . . This rule reflects . . . the common experience that an owner is familiar with her property and knows what it is worth." (Citations omitted; internal quotation marks omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 364, 788 A.2d 496 (2002). The trial court was not, however, required to credit this testimony, particularly given its basis in the hearsay statements of unnamed real estate professionals, as set forth in footnote 15 of this opinion. See *McCahill* v. *Town & Country Associates, Ltd.*, 185 Conn. 37, 41, 440 A.2d 801 (1981).

[13] We note that this assumption appears to be contrary to established Connecticut law, under which "property owners have no right to an unob-

structed view from structures built on adjacent property. The only exception to this is where there is an express statutory provision or there is a contract or restrictive covenant protecting the private right to a view or vista." (Footnotes omitted.) 9 R. Fuller, Land Use Law and Practice (4th Ed. 2015) § 4.48 p. 186; accord General Statutes § 47-25 ("[n]o occupant of real estate may acquire, by adverse occupation, the right to keep, sustain or enjoy any window or light, so as to prevent the owner of adjoining premises from erecting and maintaining any building thereon"); see *Puorto* v. *Chieppa*, 78 Conn. 401, 403–404, 62 A. 664 (1905); see also, e.g., *New Haven* v. *United Illuminating Co.*, 168 Conn. 478, 495, 362 A.2d 785 (1975) (rejecting due process claim because obstruction of views was not property interest affected by approval of construction of electric transmission line); *Irwin* v. *Planning & Zoning Commission*, 45 Conn. App. 89, 98, 694 A.2d 809 (1997) ("[t]hat the plaintiff's subdivision would alter slightly the [abutter's] view is not a significant enough reason to deny the permit"), rev'd on other grounds, 244 Conn. 619, 711 A.2d 675 (1998); *Glendenning* v. *Conservation Commission*, 12 Conn. App. 47, 55–56, 529 A.2d 727 (concluding that trial court improperly failed to consider claimed environmental impact of development when it found that plaintiffs were not aggrieved based solely on its conclusion that " 'the mere construction of a building which might partially interfere with the view of neighboring landowners significantly depreciates the value of their properties [is] highly speculative' "), cert. dismissed, 205 Conn. 802, 531 A.2d 936 (1987).

[14] We acknowledge that the plaintiffs' appendix includes architectural drawings of a proposed addition that the applicants filed with the commission in connection with the May application that is the subject of the first appeal. Nevertheless, the challenged decision did not approve—or even consider—the addition itself.

[15] Robert Mayer testified before the commission that the applicants' neighbors "who have the view of the Mystic Seaport . . . are not in favor of [the application] which is why they were not on [the applicants'] list of people" from whom they sought approval before coming to the commission. After arguing that the "[nine] foot reduction in the existing barn which is currently an [eighteen] foot by [thirteen] foot building . . . does not appear to meet the spirit of a barn renovation," Robert Mayer emphasized his admiration for the barn, and argued that its alteration would be "totally against what the [Mystic River] [h]istoric [d]istrict stands for . . . ." Robert Mayer argued that the alterations to the barn were proposed by the applicants "to get around the appeal that we are going to be making to Superior Court" from the zoning commission's separate decision to grant a variance with respect to the lot area, the lack of which would have required the applicants to reduce the size of the planned addition. Robert Mayer then asked the commission to condition any reduction in the size of the historic barn on "the understanding that it cannot be merely to reduce the size of the barn for the purpose of gaining additional [floor area ratio]. As abutting property owners, that's us, we do have a concern about our property values and the adverse effect this application may have on our property."

In responding to questions by members of the commission, Robert Mayer agreed that his "purpose of blocking the cutting down of the barn is to prevent [the applicants] from making an addition to the house." Although stating that "we [like] the barn much better than we like [the applicants'] house," Robert Mayer agreed that the "reason we don't like [the addition], and I know I'm going out on a limb because I'm always told never to mention view," is that the addition is "out of . . . [p]roportion to the lot size [the applicants have] and it blocks, and . . . we already have a situation—I'm going to mention view because his home with his porch and his Japanese maple already blocks our view in the front, now the addition that he is planning especially with the top floors—the attic floor and the second floor, will block—I know nobody cares about this but us, but it blocks all of our views from the living room, from my office, and from our bedroom. What's happening with the barn is going to block our view from the dining room so that pretty much finishes all of our unobstructed views in our home. Everyone who we—all the professionals that we have asked have said that this is going to make a difference, in our home only, of anywhere from . . . one third, I mean, 20 [percent] to one third of the value of our home."

[16] We further disagree with the plaintiffs' claim that the trial court was obligated to consider its claims that the inadequate notice rendered the commission's acts jurisdictionally defective and, therefore, void. First, this court's decision in *Edgewood Village, Inc.* v. *Housing Authority*, supra, 265 Conn. 293, squarely forecloses this claim. Consistent with *Edgewood Village, Inc.*, none of the older authorities cited by the plaintiffs stand for the proposition that a party lacking aggrievement may bring an administrative appeal

to challenge the subject matter jurisdiction of a land use agency. See *Koepke* v. *Zoning Board of Appeals*, 223 Conn. 171, 176–77, 610 A.2d 1301 (1992) (improper notice deprived zoning board of appeals of jurisdiction to revoke permit zoning officer had previously issued to plaintiff); *Lauer* v. *Zoning Commission*, 220 Conn. 455, 465, 600 A.2d 310 (1991) (rejecting claim, brought by aggrieved neighbor, that failure to give notice to adjoining municipality under General Statutes [Rev. to 1989] § 8-3h was subject matter jurisdictional defect); *Jarvis Acres, Inc.* v. *Zoning Commission*, 163 Conn. 41, 44–45, 301 A.2d 244 (1972) (stating in zoning case brought by abutting landowner, without specifically considering issue of aggrievement, that newspaper notice requirement under General Statutes § 8-3 is jurisdictional); *Nazarko* v. *Zoning Commission*, 50 Conn. App. 517, 519–20, 717 A.2d 853 (holding that improper notice deprived zoning commission of jurisdiction in appeal brought by abutting landowner), cert. denied, 247 Conn. 941, 723 A.2d 318 (1998).

[17] Turning to the proof, the commission reiterates its arguments made in connection with the first appeal, namely, that Robert Mayer's testimony before the commission; see footnote 15 of this opinion; did not establish classical aggrievement because the plaintiffs did not claim direct harm from the alterations to the barn, but only from the speculative addition.

[18] The plaintiffs alleged that the applicants' plans to "demolish or severely alter the historic barn . . . which was within the jurisdiction of the [commission], and that this was merely an effort to increase the applicants' ability to gain available lot coverage that would be allocated to a proposed rear addition, i.e., a [nonhistoric] basis to alter a historic building within the jurisdiction of the [commission] . . . ."

[19] As the commission argues, even if we look beyond the inadequate pleading and consider the proof in the trial and administrative records, for the reasons discussed in part II A of this opinion, we nevertheless conclude that the plaintiffs failed to prove their aggrievement.

--------------------------------